457 So.2d 467 (1984)
FIRST AMERICAN TITLE INSURANCE COMPANY, INC., Petitioner,
v.
FIRST TITLE SERVICE COMPANY OF THE FLORIDA KEYS INC., Respondent.
No. 63136.
Supreme Court of Florida.
June 28, 1984.
Rehearing Denied October 29, 1984.
*468 Thomas R. Tatum and Allen Bosworth of Tatum & Tatum, Fort Lauderdale, for petitioner.
S. Alan Stanley of Turner, Fascell & Russo, Coral Gables, for respondent.
Peter Guarisco, Tallahassee, amicus curiae for Florida Land Title Ass'n, Inc.
BOYD, Justice.
This cause is before the Court on petition for review of a district court of appeal decision reported as First American Title Insurance Co. v. First Title Service Co., 423 So.2d 600 (Fla. 3d DCA 1982). The district court properly followed established precedent, see Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), in holding that an abstracter can be held liable for negligent preparation of an abstract only to a party, such as the purchaser of the abstract, in privity with the abstracter. See Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195 (1940). The district court certified that its decision directly conflicts with Kovaleski v. Tallahassee Title Co., 363 So.2d 1156 (Fla. 1st DCA 1978). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. Although we decline to recognize an abstracter's liability in tort for negligence to any and all foreseeable injured parties, we hold that the plaintiff here stated a cause of action as a third-party beneficiary of the contract of employment of the abstracter.
First American Title Insurance Company brought this action against First Title Service Company of the Florida Keys alleging that First Title Service Company had prepared abstracts for the sellers of two lots and that First American Title Insurance Company, relying on the abstracts, had issued owners' and mortgagees' title insurance policies to the buyers of the two lots and their lender. The complaint went on to allege that the abstracts had failed to note the existence of a recorded judgment against a former owner of the lots; that the holder of the judgment had made demand on the new owners for payment of the judgment; and that First American, pursuant to the policies of title insurance it had issued, had been obliged to pay and had paid approximately $75,000 to satisfy the judgment and obtain releases. The complaint did not allege any privity of contract between the plaintiff insurer and the defendant abstracter, but did allege that at the time the defendant prepared the abstracts for the sellers of the lots the defendant knew that a person other than the person ordering the abstracts would rely on them as providing an accurate and complete summation of all recorded instruments affecting title to the lots in question.
The defendant abstracting company moved to dismiss the complaint for failure to state a cause of action upon which relief may be granted. The trial court granted the motion and the plaintiff title insurer appealed. As has already been stated, the district court of appeal relied on Sickler v. Indian River Abstract & Guaranty Co., and affirmed the dismissal.
In Sickler, this Court explained its holding as follows:
An abstracter is liable in damages for injuries resulting from wrongful or negligent errors, defects or omissions in an abstract prepared and furnished by him. It was settled in an early case, which has been followed in nearly all the decisions on this question, that his liability is not in tort, but is contractural, and must be based upon a breach of his express or implied contract with his customer or client to furnish him with a true and correct abstract. It is therefore measured by the nature, extent and terms of his undertaking or employment. See C.J.S. page 389, par. 11-(a).
The general rule is that the liability of an abstracter extends only to the person employing him, or to one who is a party of privy to the contract of employment. This rule seems to be unquestioned in cases where the abstracter had no knowledge that the abstract was intended for the information or use of another. See 1 C.J., pages 368-9, pars. 11 and 12.
The weight of authority is that an abstracter does not render himself liable to any and every person who may be injured *469 by reason of his negligence, ignorance, or want of skill in preparing abstracts, but that such liability exists only in favor of the person employing him or those in privity with him. The negligence or unskillfulness of an abstractor does not render him liable to the alienee, devisee, or other successor in interest [to the one] employing him, or other persons with whom there is no privity of contract.
142 Fla. at 532-33, 195 So. at 197-98 (bracketed language added for clarity; citations following quoted matter omitted).
Petitioner argues that the proper test for liability is not the existence of a contractual relationship between the parties but rather the foreseeability of the plaintiff's reliance on the defendant's abstract. The cause of action, petitioner maintains, is not based on breach of contract but on negligence. Petitioner cites numerous cases illustrating the transition from the privity doctrine to the theory of liability in tort to foreseeably injured persons. All of these cases involved bodily harm or injury caused by negligently designed or produced manufactured products or negligently prepared or packaged food products. See, e.g., West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976); Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla. 1958); Matthews v. Lawnlite Co., 88 So.2d 299 (Fla. 1956); Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313 (Fla. 1944). Petitioner points out that even with regard to actions for monetary losses only, this Court has seen fit to dispense with the privity requirement in cases of defective products. See, e.g., Manheim v. Ford Motor Co., 201 So.2d 440 (Fla. 1967); Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953).
Petitioner argues that the products liability concept (whether based on a theory of failure of due care to foreseeable users or breach of implied warranty) has been held applicable to the rendition of professional services in a decision that petitioner says impliedly overruled Sickler. It is true that in A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), this Court discussed products liability theory in holding an architect liable for negligence causing financial loss to a contractor with whom the architect had no direct contractual relationship. Our opinion in that case said:
Privity is a theoretical device of the common law that recognizes limitation of liability commensurate with compensation for contractual acceptance of risk. The sharpness of its contours blurs when brought into contact with modern concepts of tort liability. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), is heralded not so much for its decision on the facts as for its precedential value: a case relaxing privity's strictures. In Matthews v. Lawnlite Co., supra, the Court recognized MacPherson as humane and accepted its principle as being "more in line with reason and justice."
285 So.2d at 399. There the architect had supervisory responsibility for a construction project; the architect was negligent in the preparation and presentation of plans, designs, and specifications; the negligence of the architect caused financial loss to the contractor; there was no direct privity between them. The Court's opinion discussed the decline of the privity doctrine in products liability cases and concluded as follows:
From the foregoing, we are satisfied that the principle is established that a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity.
285 So.2d at 402.
Petitioner relies on numerous cases from other jurisdictions as illustrating the wisdom of recognizing an abstracter's liability for injury to any foreseeably relying parties, the most notable of which is Williams v. Polgar, 391 Mich. 6, 215 N.W.2d 149 (1974). There an abstract prepared in 1926 had failed to note the existence of a deed executed in that year. Several continuations *470 of the abstract were made thereafter, and as extended the abstract was exhibited by the seller and relied upon by the buyer in a conveyance that occurred in 1959. Subsequently the ownership interest the abstracter had failed to discover in 1926 was asserted and the 1959 purchaser suffered financial losses because of it. So, in 1971, the purchaser brought an action for damages against the successor in interest to the firm that had prepared the 1926 abstract and subsequent continuations. Pointing out that Michigan law already recognized that an abstracter is liable for negligence causing damages to a third party whom the abstractor knows is relying on the abstract, the Supreme Court of Michigan framed the issue thus: "The question boils down to whether there should be liability for foreseeable as well as known reliance." 391 Mich. at 9, 215 N.W.2d at 150. The court embraced the foreseeability theory and held that there was liability in tort. In holding that the defense of privity was no bar to the action, the court reasoned as follows:
The early common-law rule restricting liability to those in contractual privity with an abstracter was based on a system where abstracts would only be used by real estate owners. 1 Fitch, Abstracts and Titles to Real Property, § 9, p. 9; and see § 3. As time went on the actual usage of abstracts and the class of people relying on them expanded. This historical change in circumstance and the corresponding change in law is noted in numerous cases of which the following two quotations will serve as examples. The first, Brown v. Sims, 22 Ind. App. 317, 325; 53 N.E. 779; 72 Am.St.Rep. 308 (1899) illustrates a judicial expansion of liability to a known third party beneficiary:
"It is very well known that the owner of real estate seldom incurs the expense of procuring an abstract of the title from an abstracter, except for the purpose of thereby furnishing information to some third person or persons who are to be influenced by the information thus provided. If the abstracter in all cases be responsible only to the person under whose employment he performs the service, it is manifest that the loss occasioned thereby must in many cases, if not in most cases, be remediless."
The second, Gate City Abstract Co. v. Post, 55 Neb. 742, 746; 76 N.W. 471 (1898), represents judicial support of legislation that purports to create liability "for the payment by such abstracters of any or all damages that may accrue to any party or parties, by reason of any error, deficiency or mistake in any abstract":
"By the common law, as we interpret it, the owner of real estate could only utilize an abstract as an argument to reinforce his own assertions concerning the state of his title. It might be persuasive, but was without legal efficacy. He may now use it as evidence in an action to enforce the specific performance of a contract of sale, and in every other form of action in which the validity of his title or the existence or non-existence of liens or incumbrances are questions directly or collaterally involved. The right to use an abstract as evidence is not even limited to the person to whom it is issued. Any one may use it, and any one against whom it is employed may be injured in consequence of the certificate being false. Having thus widened the abstract's sphere of action, it was quite natural that the legislature should also widen the abstracter's liability."
391 Mich. at 11-13, 215 N.W.2d at 151-52 (footnotes omitted). The court went on to discuss the concept that one who undertakes by contract to perform a service not only owes a duty of diligence to his contracting counterpart, but also owes a general duty to perform the service with reasonable care, and that this latter duty may, if breached, give rise to liability in tort to a person injured even if the injured person is a stranger to the contract. After discussing the several other possible theories of recovery (fraud, deceit, warranty, and *471 strict liability) and finding them all unsatisfactory, the court concluded that the tort of negligent misrepresentation "precisely fits this situation." Id. at 20, 215 N.W.2d at 156. The court concluded:
Thus, we adopt the tort action of negligent misrepresentation in this context. See 1 Harper & James, The Law of Torts, § 7.6; 17 C.J.S., Contracts, § 154(c). It should be noted that this action is premised on negligence in title search; an abstracter is not converted into a title insurer by virtue of our decision today. We repeat that the only liability an abstracter has to an injured third-party is with respect to negligent performance of his or her contractual duty.
As to the measure of the duty required to be exercised by the abstracter, Chief Justice T.M. Kavanagh noted in Nash v. Sears, Roebuck & Co., supra, [383 Mich. 136], at page 142 [174 N.W.2d 818]:
"Every contract of employment includes an obligation, whether express or implied, to perform in a diligent and reasonably skillful workmanlike manner."
This is clearly a form of the traditional negligence standard. Since the legal duty which, when breached, gives rise to a tort cause of action, springs from the contractual duty imposed, this Nash standard governs an abstracter's legal obligation to non-contracting parties. Because an abstracter is hired to determine what is in the public record, misstatements of, or failure to include, relevant items contained in that record are obviously examples of acts constituting failure to perform abstracting services in a diligent and reasonably skillful workmanlike manner.
This cause of action arising from breach of the abstracter's contractual duty runs to those persons an abstracter could reasonably foresee as relying on the accuracy of the abstract put into motion. The particular expert-client relationship accruing to a professional contract to certify the condition of the record of title reposes a peculiar trust in an abstracter which runs not only to the original contracting party. There is a clearly foreseeable class of potential injured persons which would obviously include grantees where his or her grantor or any predecessor in title of the grantor has initiated the contract for abstracting services with the abstracter.
391 Mich. at 21-23, 215 N.W.2d at 156-57 (footnotes omitted).
We decline the petitioner's invitation to approve a completely open-ended kind of abstracter's liability based on a duty of care to any and all persons who might foreseeably use and rely on the abstract. The petitioner urges us to adopt this foreseeability theory as a matter of public policy. It is indeed a public policy question, but we do not agree with the wisdom of the policy urged upon us.
We find the attempted analogy to products liability situations unpersuasive. The privity doctrine was gradually eliminated in that field because of a recognition that manufacturers and distributors release products into the commercial marketplace which the ultimate users and consumers thereof are in no position to test, examine, or evaluate for design safety or fitness. The ultimate purchaser relies on the manufacturer for assurance that the product is safe and the manufacturer knows of this reliance. The consumer has no other alternative but reliance on the manufacturer for the fitness of the product. A prospective purchaser of real estate, on the other hand, is not so restricted in his quest for assurances that he is getting what he is paying for. Rather than rely on the abstract of title prepared for the seller or for a previous owner, the purchaser can order his own abstract and an attorney's title opinion based thereupon.
We also believe that petitioner's argument based on A.R. Moyer, Inc. v. Graham is unpersuasive. Where a contractor is totally dependent on the plans and specifications prepared and supplied by an architect or engineer with supervisory authority over a project, the contractor is unable to *472 take steps independently to protect itself against the consequences of the negligence of the architect or engineer. Although Moyer applied products-liability tort principles to negligent provision of professional services, we find a vast difference between that situation and this one. Here there is far less compelling reason to make such an application.
On the question of whether an abstracter owes a duty of due care to any and all persons who might foreseeably see, use, and rely on the abstract, we believe the analysis made in Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), pertaining to a negligence action against an accounting firm, is highly persuasive.
If liability [to third parties] for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.
Id. at 179-80, 174 N.E. at 444. To hold an abstracter liable to every stranger to the contract of employment who might happen to come to see and rely on the abstract would be like holding a title insurer liable to anyone who knows of the issuance of an insurance policy but who has not paid a premium. For the reasons stated we decline to expose abstracters to liability to any person who foreseeably relies on a negligently prepared abstract to his detriment.
While the policy arguments put forth by the petitioner, and so well expressed in Williams v. Polgar, do not persuade us to adopt open-ended liability for negligence to any foreseeably relying persons, they do convince us that, when an abstract is prepared in the knowledge or under conditions in which an abstracter should reasonably expect that the employer is to provide it to third persons for purposes of inducing those persons to rely on the abstract as evidence of title, the abstracter's contractual duty to perform the service skillfully and diligently runs to the benefit of such known third parties. As was said in Brown v. Sims, 22 Ind. App. 317, 53 N.E. 779 (1899), and quoted by the Michigan Supreme Court in Williams v. Polgar, "It is very well known that the owner of real estate seldom incurs the expense of procuring an abstract of title from an abstracter, except for the purpose of thereby furnishing information to some third person or persons who are to be influenced by the information thus provided." 22 Ind. App. at 325, 53 N.E. at 781.
An illustrative decision is Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, (1922), where it was said that "knowledge of a prospective use" enlarges "the bounds of duty." Id. at 240, 135 N.E. at 276. There the sellers of goods employed a firm of weighers to weigh the goods and provide the information to the buyers. The goods "were accepted and paid for on the faith of the certificates" provided by the weighers. Id. at 238, 135 N.E. at 275. The weights were inaccurate, the buyers suffered a loss when they resold, and the buyers sought compensation from the weighers. The weighers defended on the ground of lack of contractual relationship. The New York Court of Appeals said:
We think the law imposes a duty toward buyer as well as seller in the situation here disclosed. The plaintiffs' use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction. Bech, Van Siclen & Co. ordered, but Glanzer Brothers were to use. The defendants held themselves out to the public as skilled and careful in their calling. They knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the plaintiffs for the very purpose of inducing action. All this they admit. In such circumstances, assumption *473 of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law (cf. MacPherson v. Buick Motor Co., 217 N.Y. 382, 390 [111 N.E. 1050]).
233 N.Y. at 238-39, 135 N.E. at 275-76. Similarly, when an abstracter knows that his employer or customer is ordering the abstract for the use of a purchaser of the property, reliance on the abstract by the purchaser is "the end and aim of the transaction." We therefore hold that such a known third-party user is owed the same duty and is entitled to the same remedy as the one who ordered the abstract.
It clearly follows that the purchasers here, as intended and known beneficiaries of the contract for the abstract service, may recover damages from the abstract company for its negligent performance. But the purchasers, of course, are not the plaintiffs. The plaintiff in this case, and the petitioner before us, is First American Title Insurance Company. The purchasers of the property, and their lender-mortgagee, have been fully protected from harm and made whole by their title insurer's satisfaction of the judgment that threatened their title and security interests. But we believe it is fair to say, and we so hold, that the title insurer stands in the place of its insured under principles of subrogation. Having held the owner harmless from the negligently omitted title defect, the insurer may pursue the purchaser's cause of action against the abstracter. See, e.g., Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916); Urich and Milne, Abstracter's Liability  And Beyond, 53 Fla.B.J. 210, 212 (1979). Through the doctrine of legal subrogation, we believe the title insurer who has indemnified an owner or mortgagee for losses incurred due to a title defect may accede to the right of such owner or mortgagee to recover damages from a negligent abstracter who knew that the abstract was ordered for the benefit of the purchaser or mortgagee. See Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116 (1934); Federal Land Bank v. Godwin, 107 Fla. 537, 546, 145 So. 883 (1933); Cuesta, Rey & Co. v. Newsom, 102 Fla. 853, 136 So. 551 (1931); Union Indemnity Co. v. City of New Smyrna, 100 Fla. 980, 130 So. 453 (1930).[*]
The effect of our holding in this case will be to change the law of abstracter's liability, but not so drastically as the petitioner would have us change it. Where the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs, as we have said, not only to his customer but to the purchaser. Moreover, others involved in the transaction through their relationship to the purchaser  such as lender-mortgagees, tenants and title insurers  will also be protected where the purchaser's reliance was known or should have been known to the abstracter. But a party into whose hands the abstract falls in connection with a subsequent transaction is not among those to whom the abstracter owes a duty of care.
Applying these new principles of Florida law to the facts of this case, we conclude that the petitioner's complaint stated a cause of action. Of course, our recitation of facts above was based on the allegations of the complaint which we took to be true but which remain to be proven. Thus it remains to be established that the abstracter knew or reasonably should have known that the abstract was ordered for the use of the purchasers or others likely *474 to rely upon it in the near future. This can be shown by inference from circumstances. Most importantly, it must be shown that the fault in the abstract was due to the negligence of the abstracting company or its agent or employee.
Although the district court of appeal was correct in following and applying an established principle of law embodied in a prior and standing precedent from this Court, see Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) our holding today necessarily requires that we overturn the district court's decision. We note that the case in conflict, Kovaleski v. Tallahassee Title Co., 363 So.2d 1156 (Fla. 1st DCA 1978), adopted the foreseeability approach of Williams v. Polgar and is therefore also inconsistent with our decision here.
The decision of the district court of appeal is quashed and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.
ALDERMAN, C.J., OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, Justice, Dissenting:
"I would not modify the rule in Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195 (1940)."
NOTES
[*] We have already indicated our holding that the complaint stated a cause of action. Thus the motion to dismiss for failure to state a cause of action should have been denied. On remand, the failure of the complaint to plead the right of subrogation should not be a basis for dismissal with prejudice but rather should be an occasion for allowing amendment of the complaint.