**SEABOARD SURETY COMPANY,
Plaintiff-Appellant,**

v.

**GARRISON, WEBB & STANALAND, P.A., f/k/a Stanaland, Blackwell & Company, P.A. and William Stanaland, Defendants-Appellees.**

**No. 86–3255.**

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1987.

Norman L. Hull, Orlando, Fla., for plaintiff-appellant.

Andrew A. Graham, Melbourne, Fla., for defendants-appellees.

Before RONEY, Chief Judge, KRAVITCH and EDMONDSON, Circuit Judges.

PER CURIAM:

This case arises out of a financial audit of Advance Contractors, Inc. performed at its request by the defendant certified public accountants. This audit was relied upon by plaintiff Seaboard Surety Company, a bonding company, when it wrote three performance bonds for the contractor. When the contractor defaulted on its construction contract and went bankrupt, Seaboard allegedly lost over $1,400,000. The bonding company, claiming the audit failed to reveal a $500,000 indebtedness, sued the accountants (1) for gross negligence, (2) for fraud, and (3) as a third-party beneficiary of the audit performed by the accountants on behalf of the contractor. The district court entered a directed verdict for defendants on the gross negligence count, and Seaboard has not appealed from that ruling. The parties stipulated to a dismissal, without prejudice, of the fraud count. The case went to the jury on the third-party beneficiary count with instructions[1] and special

---

1. In the present case, the plaintiff has alleged that it was the third-party beneficiary of the contract entered into between advanced contractors and the Defendant Stanaland, Blackwell and Company. You are further instructed that the Plaintiff Seaboard Surety Company must establish by a preponderance of the evidence that it relied upon the October 31, 1981 audited financial statements of Advanced Contractors in making its decision to issue three additional bonds to Advanced Contractors, and that such reliance was reasonable and justified under the circumstances.

Professional individuals in general and those who undertake any work or calling for which a special skill is required have a duty not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability.

A professional such as an accountant is required to possess a reasonable degree of learning, skill and experience which ordinarily is possessed by others of his profession and he must exercise reasonable and ordinary care and diligence in the execution of his skill in the application of his knowledge and exert his best judgment as to the handling of a matter entrusted to him.

One who undertakes to render services in the practice of a profession is required to exercise the skill and knowledge normally possessed by members of his profession in good standing in similar communities.

Negligence is the failure of a professional to have or exercise the level of skill and knowledge normally possessed by members of the profession in similar circumstances and similar communities.

Every contract of employment includes an obligation, whether expressed or implied, to perform in a diligent and reasonably skillful workman-like manner.

When an accountant prepares financial statements in the knowledge or under conditions under which the accountant should reasonably expect that the employer is to provide the financial statements to third persons for purposes of inducing those persons to rely on the financial statements, the accountants contractual duty to perform the services skillfully and diligently runs to the benefit of such known third parties.

Where the accountant knows, or should know, that his customer wants the financial statements for the use of a third party, and the third party acts in reliance on the financial statements, the accountant is responsible to the

interrogatories[2] which reflected the district court's view that any third-party liability must be premised on a breach of the underlying contract between the defendant accountants and Advanced Contractors, and that any defenses available against the contracting party were also available against a third-party beneficiary. The jury returned a verdict for defendants based on its finding that although plaintiff was a third-party beneficiary to the contract, defendants had not effectively breached the contract by failing to perform the audit with reasonable care. We affirm.

▮ Plaintiff's appeal focuses on Florida law and the proper interpretation to be given to *First American Title Ins. v. First Title Serv. Co.*, 457 So.2d 467 (Fla.1984). In that case, the Florida Supreme Court established for the first time that a title abstracter owes a duty of care to certain third parties who are not in privity with the abstracter. The parties do not contest the extension of *First American Title* to accountants, and it seems clear that the principle of law there announced would be extended to such audit contracts by the Florida courts. *See Investment Corporation of Florida v. Buchman*, 208 So.2d 291 (Fla. 2d DCA 1968); *Canaveral Capital Corporation v. Bruce*, 214 So.2d 505 (Fla. 3d DCA 1968).

▮ Plaintiff Seaboard Surety claims that *First American Title* recognized a duty flowing from the accountants to third parties "independent" of the duty owed by defendants to the contractor. Consistent with this interpretation, Seaboard Surety objected to the instructions and special interrogatories which premised defendants' liability to Seaboard Surety on a breach of its contract with Advanced Contractors, Inc., the bonded contractor who employed defendant accountants to do the audit. Seaboard Surety argues that although the Florida Supreme Court held that the plaintiffs in *First American Title* had "stated a cause of action as a third-party beneficiary of the contract," 457 So.2d at 468, the true nature of the cause of action created sounds in tort rather than contract principles. Seaboard Surety points out that the Florida Supreme Court cited *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) (per Cardozo, C.J.), and *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922) (per Cardozo, C.J.), with approval in its *First American Title* opinion. Seaboard Surety argues that the court's reliance upon these cases, which address tort actions for negligence, supports the conclusion that the cause of action created in *First American Title* has a tort basis.

The only reason the Florida Supreme Court couched its decision in contract terminology, Seaboard Surety argues, was in order to restrict the size of the potential plaintiff class, not the theory of recovery or the scope of the duty owed.

▮ This argument fails for several reasons, all involving the essential contract third party for a failure to exercise reasonable care in the exercise of his professional expertise.

A third-party beneficiary stands in the shoes of the party contracting for them and can have no greater rights than the party to the contract. All defenses which may be raised against the contracting party may be raised against a third-party beneficiary of such contract.

**2.** VERDICT

We, the jury, return the following verdict:

1. Was plaintiff, Seaboard Surety Company, a third-party beneficiary of the contract between Advanced Contractors, Inc. and Stanaland, Blackwell & Company?

YES  X  NO ____

If your answer to question 1 is no, your verdict is for the defendants and you should not proceed further. If your answer to question 1 is yes, please answer question 2.

2. Did defendant, Stanaland, Blackwell & Company, breach its contract with Advanced Contractors, Inc. by failing to perform its audit with reasonable care?

YES ____  NO  X

If you answer to question 2 is no, you verdict is for defendants and you should not proceed further. If your answer to question 2 is yes, please answer question 3.

nature of the Florida Supreme Court's decision in *First American Title*. *First*, Seaboard Surety's arguments have, on appeal, essentially tracked the failed petitioner's arguments in *First American Title* itself. Seaboard Surety basically contends that the proper test for liability is not the existence of a contractual relationship between the parties, but rather the foreseeability of the plaintiff's reliance. But that argument was rejected by the Florida Supreme Court because all the cases cited in support of this erosion of contract theory involved bodily harm or injury caused by design defect. The privity doctrine had indeed been undermined in the area of products liability, the court explained, but not because reliance had now become the basic underpinning of contract law. The reason privity had lost its strength in the field of products liability was instead due to the need for the ultimate consumer to rely upon a distant manufacturer with whom no privity could ever be established for the safety and fitness of the product.

The Florida Supreme Court also distinguished its decision from the result reached in *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973). In *A.R. Moyer*, the contractor was totally dependent upon the plans and specifications prepared by an architect or engineer and was unable to take steps independently to protect itself against the consequences of the negligence of the architect or engineer. *First American Title*, 457 So.2d at 471–72.

*Second*, the Court found the policy arguments put forward in the cases referred to above along with *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974), as helpful in its extension of privity, but expressly stated that these policy arguments "do not persuade us to adopt open-ended liability for negligence to any foreseeably relying persons." *First American Title*, 457 So.2d at 472. The Court then proceeded to state the proposition of law it wished to establish in terms of a contractual duty:

When an abstract is prepared in the knowledge or under conditions in which an abstracter should reasonably expect that the employer is to provide it to third persons for purposes of inducing those persons to rely on the abstract as evidence of title, the abstracter's *contractual duty* to perform the service skillfully and diligently runs to the benefit of such known third parties.

*Id.* at 472 (emphasis added).

*Third*, the law of Florida prior to *First American Title* had developed out of and continued to rely upon the contract theory of recovery. *See Sickler*, 195 So.2d at 197; *Investment Corporation of Florida v. Buchman, supra, Canaveral Capital Corporation, supra; but see Kovaleski v. Tallahassee Title Co.*, 363 So.2d 1156, 1160 (Fla. 1st DCA 1978) (The Florida Supreme Court cast some doubt on *Kovaleski* in its opinion in *First American Title. See* 457 So.2d at 474).

*Fourth*, a Florida appellate court, subsequent to the decision in *First American Title* and citing it for support, has stated that the third-party beneficiaries "stand in the shoes of the party contracting for [the service] and can have no greater right than a party to the contract." *Cristich v. Allen Engineering, Inc.*, 458 So.2d 76, 79 (Fla. 5th DCA 1984) (holding that the two-year statute of limitations for contract causes of action applied rather than the longer four-year period for tort claims). The *Cristich* decision supports the district court's view that liability must be premised upon a breach of the underlying contract.

*Fifth*, the jury concluded that Seaboard Surety was a third-party beneficiary of the contract between the contractor and this accounting firm. It is well settled, however, that in general the third-party beneficiary's right can rise no higher than that of the promisee. E. Farnsworth, *Contracts* §§ 10.5–10.7 (1982). This principle is subject to contrary agreement or special cir-

438

cumstance, but Seaboard Surety has shown the existence of neither.

■ Finally, Seaboard Surety has urged us to certify this question of law to the Supreme Court of Florida under Fla. Stat. 25.031 and Fla.R.App.P. 9.150. This we decline to do. Seaboard Surety is apparently hopeful that Florida will extend the law as now set forth in *First American Title.* This is a diversity suit which could have been brought in state court had Seaboard Surety wanted to get a state decision on whether to expand existing law. Having sought a Federal forum, Seaboard Surety must abide by federal determination as to the present state of Florida law.

AFFIRMED.