609 So.2d 1349 (1992)
The SANDARAC ASSOCIATION, INC., a Florida corporation, Appellant,
v.
W.R. FRIZZELL ARCHITECTS, INC., a Florida corporation; and H.D. Rutledge & Son, Inc., a Florida corporation, Appellees.
Nos. 91-02254, 91-01814.
District Court of Appeal of Florida, Second District.
December 11, 1992.
*1350 Wade H. Parsons of Parsons & Associates, Fort Myers, for appellant.
David C. Schwartz of Rumberger, Kirk, Caldwell & Wechsler, P.A., Orlando, for appellee W.R. Frizzell Architects, Inc.; and Mark A. Ebelini of Humphrey & Knott, P.A., Fort Myers, for appellee H.D. Rutledge & Son, Inc.
ALTENBERND, Judge.
The Sandarac Association, Inc. (Sandarac), a condominium association, appeals an order dismissing with prejudice its complaint against the architect and the general contractor who designed and built its condominium. Because the complaint alleges only negligence against these parties and seeks a recovery only for economic losses, we affirm. Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987); McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc., 582 So.2d 47 (Fla. 2d DCA), dismissed, 587 So.2d 1327 (Fla. 1991); Seawatch at Marathon Condo. Ass'n v. Charley Toppino & Sons, Inc., 610 So.2d 470 (Fla. 3d DCA 1992); Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc., 588 So.2d 631 (Fla. 3d DCA 1991), jurisdiction accepted, 602 So.2d 533 (Fla. July 7, 1992); GAF Corp. v. Zack Co., 445 So.2d 350 (Fla. 3d DCA), review denied, 453 So.2d 45 (Fla. 1984). But see Latite Roofing Co. v. Urbanek, 528 So.2d 1381 (Fla. 4th DCA 1988) (recovery in negligence available for economic loss if no privity of contract between the parties).

*1351 I. THE ALLEGATIONS OF THE AMENDED COMPLAINT
In 1990, Sandarac sued W.R. Frizzell Architects, Inc. (the architects), and H.D. Rutledge & Son, Inc. (the general contractor). The amended complaint states that Sandarac is responsible for maintaining a condominium originally to be known as Estero Towers and subsequently renamed Sandarac I Condominium. This project was commenced in 1974. The amended complaint does not disclose when the project was completed or when it received a certificate of occupancy.
Sandarac alleges that the general contractor committed certain negligent acts during the construction of the building. Specifically, Sandarac claims that the general contractor was negligent because it installed hollow precast lintels above the windows, used inadequate amounts of concrete to cover steel reinforcement on the balcony slabs, and failed to properly anchor masonry walls to the structural steel frame. Although the amended complaint is silent on the subject, we assume that these alleged defects were latent and were recently discovered. The amended complaint alleges that the defects "caused and will continue to cause damage to [Sandarac] by reason of the costs of repair of the common elements."
The allegations against the architect are similar. Sandarac maintains that the architect negligently prepared the plans for the building because it specified a "through the wall flashing" for the masonry walls. This flashing did not allow for the proper anchorage for the wall as required by the applicable building code. Again, this negligence allegedly had and would continue to result in damage only due to the costs of repair.
The trial court dismissed the two defendants in separate orders, and Sandarac did not seek to further amend its complaint. We have consolidated the two appeals.
Sandarac has not sued the developer for breach of contract, and has not sued any party for breach of an express or implied warranty of habitability, fitness or merchantability. See Greenburg v. Johnston, 367 So.2d 229 (Fla. 2d DCA 1979); § 718.203, Fla. Stat. (1991). We assume that the decision not to pursue these claims was made either because the contract and warranties provide no relief at this late date or because the parties with which Sandarac had privity are no longer financially sound.[1] Moreover, Sandarac has not alleged fraud or any other theory of intentional tort.

II. THE ISSUE
The difficult legal issue in this case is whether a condominium association can sue a general contractor or an architect in negligence to protect its purely economic interests arising out of defects in the common areas of a condominium structure. We recognize that the tension between A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), and AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987), has made decisions in this area difficult to reconcile.[2] We conclude, however, that the plaintiff has not established a legal justification in this case to authorize a judicial expansion of negligence law to protect these purely economic expectations arising from the relationship between a condominium association and the parties responsible for the construction of the condominium. We have come to this conclusion after a thorough review of Florida Power & *1352 Light, AFM, and East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In light of the remedies available to the parties in such a relationship under contract, warranty, and statutory law, these specific circumstances do not warrant the creation of an exception to the traditional common law rule which limits the interests protected by negligence law to interests involving bodily injury and property damage.
As explained in greater detail later in this opinion, the judiciary has cautiously expanded the law of negligence to protect economic expectations only in situations where legal theories based on privity or statutory law have proven inadequate to protect important interests and strong public policies have warranted an expansion of negligence law to resolve problems traditionally protected only by private agreement or statutory regulation. To the extent recent case law suggests that negligence may cover economic interests as a matter of course in the absence of a contract between the parties, we believe those cases have misconstrued dicta in AFM.

III. THE ECONOMIC LOSS RULE
The economic loss rule is stated with ease but applied with great difficulty. The majority rule in this country holds that economic damages are not recoverable in negligence unaccompanied by physical property damage or bodily injury. See R. Dunn, Recovery of Damages for Lost Profits § 3.6 (4th ed. 1992). Florida follows this general rule. Florida Power & Light; AFM. It is obvious, however, that exceptions exist to this rule. First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990); First American Title Ins. Co. v. First Title Serv. Co. of the Florida Keys, 457 So.2d 467 (Fla. 1984). Lawyers and judges alike have found it difficult to determine when the rule applies and when an exception is appropriate.
The case law demonstrates this confusion by applying at least three distinct analyses of the rule. The first view recognizes that the economic loss rule is largely a restatement of the traditional common law rule that negligence law is intended primarily to protect interests concerning the safety of one's person and property. The second view sees the economic loss rule as a limitation on recovery in negligence when the parties have elected an alternative remedy under contract law. The third view treats the economic loss rule as a bar to recovery on an otherwise viable cause of action in negligence because the damages are only economic. We conclude that an analysis which emphasizes basic principles of negligence law, under the first view, is more likely to lead to a sound decision.[3] This opinion briefly explains difficulties with the other two viewpoints.

A. The Economic Loss Rule as a Restatement of the Common Law Principle that Negligence Protects Interests in the Safety of One's Person and Property.

Duty in negligence requires a relationship in which one person is determined to have a responsibility to protect some interest of another person. As explained in section 281 of the Restatement (Second) of Torts, "[t]he actor is liable for an invasion of an interest of another, if: (a) the interest invaded is protected against unintentional invasion... ." Whether an interest is protected, under common law tradition, is a matter of law decided by the judiciary when it determines the issue of duty. McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992).
Historically, the judiciary has limited the protected interests in negligence to interests concerning the safety of one's person and property. A full discussion of the reasons for these limitations is beyond the *1353 scope of this opinion. Suffice it to say that these interests are ones that people usually have no opportunity to protect in private contracts. An allocation of these risks to the party who unreasonably causes the damages avoids social conflict and is frequently cost-effective. Through the law of negligence and the reasonable person standard, the judiciary allocates these risks among the members of society because private agreements simply cannot effectively accomplish the task.[4] If the judiciary allocates a risk in a manner that is contrary to the view of a majority of citizens, the legislature normally has the power to adjust the allocation. Compare Zorzos v. Rosen, 467 So.2d 305 (Fla. 1985) with § 768.0415, Fla. Stat. (1991) (court declines to create child consortium claim in personal injury but legislature creates the claim).
From this perspective, an "exception" to the economic loss rule is actually an expansion of negligence law to protect interests not traditionally protected by negligence law. The exception creates a new relationship of duty and a corresponding standard of care to protect a purely economic interest in the absence of bodily injury or property damage.
There is nothing inherently right or wrong with a judicial decision to expand negligence to protect such a new interest. When the judiciary creates a new duty in negligence to protect economic interests, however, it should be aware that it is not merely creating an exception to an existing common law rule of damages. It should be convinced that the problem justifies a judicial allocation of the relevant risks among the members of society, and that an adequate remedy cannot realistically exist through private contracts and statutory remedies.
Florida has created at least three exceptions to the general rules of negligence in order to permit recovery for economic loss. Under restricted circumstances, attorneys, abstractors, and accountants may be liable to specific plaintiffs for economic damages arising from their negligent performance of professional services. See Angel, Cohen & Rogovin v. Oberson Inv., N.V., 512 So.2d 192 (Fla. 1987) (declining to extend attorneys' liability to incidental beneficiary of services); Max Mitchell; First American.
The supreme court's analysis of these three exceptions share several concerns. First, relying upon Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), the court recognizes that the relationship of duty in negligence cannot realistically be extended to all persons suffering economic loss whose reliance is foreseeable. First American, 457 So.2d at 472. The extension of negligence must be controlled by factors in addition to foreseeability.
Second, these cases all demonstrate a tendency to create third-party beneficiary status through negligence law when an existing, specifically identifiable, intended beneficiary of a contract has not been given that status in the contract. Third-party beneficiary status under Florida contract law has been a matter of contract interpretation. See A.R. Moyer. Thus, the status can be eliminated by language in a document over which the third party has no control. The court, in Max Mitchell and First American, recognized a protected economic interest in negligence essentially to give guaranteed third-party status to these identified, intended beneficiaries. The law can legitimately require providers of professional services to include such persons in a class of third-party beneficiaries. *1354 There is danger in this method, however, if the third-party status in negligence creates greater rights for the beneficiaries than they would have received if someone had paid to make them formal third-party beneficiaries to a contract.
It has been argued that a fourth exception was created for the construction industry in A.R. Moyer. See E.C. Goldman, Inc. v. A/R/C Assocs., 543 So.2d 1268 (Fla. 5th DCA) (Daniel, J., dissenting), review denied, 551 So.2d 461 (Fla. 1989). In light of the discussion of A.R. Moyer in Max Mitchell, however, this court now limits its application of A.R. Moyer to circumstances in which the defendant architect has supervisory powers over the plaintiff. McElvy, Jennewein.[5] Again, such a situation involves a plaintiff who is a known, intended beneficiary of the architect's contract at the time it is performed.
A condominium association's need for such third-party status in negligence is less obvious. Although it can be forcefully argued that an association is a known, intended eventual beneficiary of the construction contracts, the risks arising in this context can be distributed through existing, more narrow mechanisms, other than negligence law. The courts have long recognized implied warranties for condominium purchasers. Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA), decision adopted, 264 So.2d 418 (Fla. 1972). Likewise, the legislature has created certain statutory warranties. See § 718.203, Fla. Stat. (1991). The condominium association can clearly be made an express third-party beneficiary in the developer's contract with the general contractor and the architect. The legislature presumably could require such a clause in the contract.
To create an open-ended right in negligence to protect such economic expectations seems ill-advised within the context of this case. Recognizing a duty in negligence in this type of case risks providing a remedy, without consideration, that is of longer duration and of greater financial impact than the remedy the parties may have reached in a contract for consideration. We are simply unconvinced that the problem currently warrants this expansion of negligence law.
Because negligence traditionally protects interests arising from property damage or bodily injury, there is an important comparison between the economic loss rule and the impact doctrine. The economic loss rule prevents recovery in the absence of physical property damage. The impact doctrine prevented recovery in the absence of an impact resulting in bodily injury. See Champion v. Gray, 478 So.2d 17 (Fla. 1985). The impact doctrine was occasionally a harsh rule. When it was modified in Champion, the supreme court continued to require the plaintiff to prove significant discernible physical injury arising from the negligence. Thus, that modification did not abandon the traditional rule that negligence protects interests arising from bodily injury or property damage.
Similar to the application of the impact doctrine, the distinction between economic loss and property damage is occasionally difficult to draw and leads to harsh results. See Casa Clara. We do not foreclose the possibility that the economic loss rule could be modified to allow recovery, for example, when the economic expense cures a latent building defect that creates an immediate and substantial risk of bodily injury or damage to property other than the building. The allegations in Sandarac's complaint, however, do not attempt to allege such a theory.

B. The Economic Loss Rule as a Limitation of Negligence When the Parties Have Elected an Alternative Remedy Under Contract Law.

Both Florida Power & Light and AFM involve situations in which the plaintiff had a contract with the defendant and sought additional damages in negligence. Thus, it is understandable that the court was influenced *1355 by the possible duplication between the two remedies. Both cases, however, simply declined to recognize a protected interest under negligence law for economic expectations in the absence of bodily injury or property damage.
In AFM, the court distinguished its opinion in A.R. Moyer. In doing so, the court emphasized that no privity of contract existed in A.R. Moyer, and that the plaintiff was not a third-party beneficiary of a contract. The court stated: "Since there was no contract under which the general contractor could recover his loss, we concluded he did have a cause of action in tort." AFM, 515 So.2d at 181. This effort to distinguish A.R. Moyer in dicta has resulted in a line of cases that seem to create a new relationship of duty in negligence to protect economic expectations merely because no contract exists. Latite Roofing. See also Butchkosky v. Enstrom Helicopter Corp., 784 F. Supp. 882 (S.D.Fla. 1992); Interfase Mktg., Inc. v. Pioneer Technologies Group, Inc., 774 F. Supp. 1351 (M.D.Fla. 1991).
For two reasons we are convinced that these cases have given too great an emphasis to the quoted language in AFM. First, after its decision in AFM, the supreme court again distinguished its opinion in A.R. Moyer in First American. It did so, not due to the existence of a contract, but rather because of the nature of the architect's supervisory authority over the project. First American, 457 So.2d at 471-72. Second, in Florida Power and Aetna Life & Cas. Co. v. Therm-O-Disc, 511 So.2d 992 (Fla. 1987), the immediate precursors to AFM, the supreme court relied upon GAF Corp. No recovery in negligence was allowed in GAF Corp., even in the absence of a contract. The supreme court has never disapproved the analysis in GAF Corp. The existence of an alternative contractual remedy is certainly a factor to be considered in deciding whether to create a new protected interest in negligence law, but it is not the exclusive factor.

C. The Economic Loss Rule as a Threshold Bar to an Existing Cause of Action.

Finally, the case law sometimes discusses the economic loss rule as a "bar" to the plaintiff's claim. See, e.g., Bay Garden Manor Condo. Ass'n v. James D. Marks Assocs., 576 So.2d 744 (Fla. 3d DCA 1991); Pulte Home Corp. v. Ply Gem Indus., 804 F. Supp. 1471 (M.D.Fla. 1992). Technically, this is incorrect. Because the law of negligence does not recognize a protected interest in purely economic loss, no cause of action exists under such circumstances. Cf. § 627.737, Fla. Stat. (1991) (in which the no-fault threshold is a true bar to an existing cause of action). The analysis of an exception to the economic loss rule must justify the creation of a new cause of action  not a bar to an existing cause of action. It seems more difficult to justify a new claim than to lift a bar against an existing claim.

IV. A CERTIFIED QUESTION
We are inclined to believe that this case conflicts with the rule announced in such cases as Latite. To assure that the parties can pursue this issue in the supreme court and in light of the related issues currently pending in Casa Clara, we certify the following question to the supreme court:
IN ADDITION TO STATUTORY REMEDIES AND IMPLIED WARRANTIES, DO CONDOMINIUM ASSOCIATIONS HAVE A REMEDY IN NEGLIGENCE AGAINST CONTRACTORS AND ARCHITECTS TO SEEK RECOVERY FOR ECONOMIC DAMAGES ARISING FROM DEFECTIVE CONSTRUCTION OF THE COMMON AREAS OF THE CONDOMINIUM?
Affirmed.
HALL, A.C.J., and PARKER, J., concur.
NOTES
[1] We note that the dismissal in this case is not based on the statute of limitations concerning an action founded upon the design, planning or construction of an improvement to real property. See § 95.11(3)(c), Fla. Stat. (1991). It is possible that this action was filed within the period of limitations in light of the fifteen-year statute of repose. See § 95.11(3)(c), Fla. Stat. (1991). We express no opinion concerning any statute of limitations on a claim for breach of an express or implied warranty under these circumstances. See Seawatch at Marathon Condo. Ass'n v. Charley Toppino & Sons, Inc., 610 So.2d 470 (Fla. 3d DCA 1992).
[2] R. Buesing, J. Johnson, The Economic Loss Rule: A Trial Lawyer's Guide to Protecting Contract Rights, 66 Fla.B.J. 38 (1992); M. Hanzman, An Unprecedented and Improper Expansion of Florida's "Economic Loss" and "Independent Tort" Rules, 66 Fla.B.J. 42 (1992).
[3] The economic loss rule is sometimes described as a rule applicable to all tort theories, including fraud and other intentional torts. See Interfase Mktg., Inc. v. Pioneer Technologies Group, Inc., 774 F. Supp. 1351 (M.D.Fla. 1991); Serina v. Albertson's, Inc., 744 F. Supp. 1113 (M.D.Fla. 1990). We limit our analysis to the law of negligence because the interests protected by negligence are not identical to those protected by other torts. We note that the supreme court has indicated it will not apply the economic loss rule or require privity for a claim of fraud against an accountant. First Florida Bank v. Max Mitchell & Co., 558 So.2d 9, 14 (Fla. 1990).
[4] The law of negligence in the United States developed extensively during the nineteenth century. L. Friedman, A History of American Law (1973). The judges who created this law were influenced by political theories of social contract. See T. Hobbes, Leviathan (Dutton 1950) (1651); J. Rousseau, The Social Contract, and Discourses (Dutton 1950) (1762). In a democracy, the social contract is an agreement between the members of society by which each member undertakes duties in consideration for the benefit received when all members fulfill similar duties. Although the analogy can be overstated, through the law of negligence, the judiciary has written an express "social contract" with limited remedies to protect interests not adequately protected in private contracts.
[5] Prior to Max Mitchell, AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987), and Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987), this court may have given a broader interpretation to A.R. Moyer v. Graham, 285 So.2d 397 (Fla. 1973). See Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla. 1979).