**Ronald R. BAUBLIT and Rosalie M. Baublit, Appellants,**

v.

**BARR & RIDDLE ENGINEERING CO., INC., Respondent.**

**No. WD 40846.**

Missouri Court of Appeals, Western District.

April 18, 1989.

---

Robert D. Colley, St. Joseph, for appellants.

Richard J. Yocum, St. Joseph, for respondent.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The Baublit's petition asking for damages for the negligence of the defendant Barr & Riddle Engineering in preparing a survey, fell to the engineering company's motion for summary judgment. At issue is the loss of a strip of land which contains a well which was thought by the Baublits to be on their property, but because of the

survey was lost by them to an adjoining landowner. The respondent's motion alleged the applicable five year statute of limitations, § 516.120, RSMo 1986 had run, and also asked for judgment because the Baublits lacked standing.

The trial court dismissed the suit finding the statute of limitations had run on the claim. Although the trial court's result could be sustained on the limitations question, this court will sustain the trial court's decision on the basis the Baublits lacked standing to complain about the survey because it was done for someone else. *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318 (Mo. banc 1964).

"When reviewing a ruling on a motion for summary judgment an appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the evidence ... The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact ... A genuine issue of fact exists when there is the slightest doubt about a fact." *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987) (citations omitted); Rule 74.04. *See also Hayes v. Hatfield*, 758 S.W.2d 470, 472 (Mo.App.1988) ("It is no longer necessary for a movant to show by unassailable proof that he is entitled to summary judgment.").

The facts were as follows: On July 30, 1965, the Baublits purchased a piece of property located in Buchanan County. In 1973, the Baublits hired Riddle Engineering Company (a predecessor to the present defendant company) to make a survey of their property. The Baublits later disputed the correctness of the 1973 survey. They cited a survey done in 1918 which conflicted with the 1973 survey. They then hired Williamson Engineering to survey the property. The Williamson survey was essentially the same as the Riddle survey done in 1973. Thereafter, the Baublits hired Gene Buzzard to survey the property. That survey was not completed until 1987.

During 1981, the Cooks and Millers, whose property was located to the north of the Baublits' property, decided to sell their property to the Bryants. In connection with that sale, Barr–Riddle, at the request of the Cooks and Millers, conducted a survey of their property. The results of the Barr–Riddle survey showed the well to be on the property owned by the Cooks and Millers (the same conclusion as the 1973 and the Williamson survey). Thereafter, the land was sold to the Bryants. It is this 1981 Barr–Riddle survey that the Baublits allege to have been performed negligently by placing the well on the wrong side of the property line. They claim that the survey was the reason they lost an unlawful detainer suit filed by the Bryants.

The Bryants had filed the unlawful detainer suit against the Baublits in August of 1981. The Barr–Riddle survey was introduced into evidence. The Baublits argued that the 1981 survey was incorrect. The Bryants were awarded the disputed property in 1982. *Bryant v. Baublit*, case no. CV5–581–1006ACX.

The issue on appeal is whether a cause of action can be maintained against a land surveyor by a party other than the person or property owner with which the surveyor has entered into a contractual relationship?

The general rule is that no cause of action in tort can arise from the breach of a contractual duty, unless there is privity of contract. *Ultramares Corp. v. Touche*, 255 N.Y. 170, 180–85, 174 N.E. 441, 444–48 (1931) "This rule requiring privity has not been followed blindly and without exception ... when the application of the rule would produce a result contrary to the requirements of essential justice and sound public policy it has been whittled away by exceptions. In fact, throughout the years so many exceptions have been engrafted upon the rule that it has been said, perhaps too broadly, that the exceptions have 'swallowed the rule.'" *Westerhold v. Carroll*, 419 S.W.2d 73, at 77 (Mo.1967) (citations omitted).

*Glanzer v. Shephard*, 233 N.Y. 236, 135 N.E. 275 (1922) was the first case where a person who supplied false information in the course of his contract was held liable in tort for the economic loss suffered by vir-

tue of the false information. In that case, a purchaser of beans was allowed to recover from a public weigher who incorrectly certified the weight of the beans to the seller. See *Ultramares, supra*, 255 N.Y. 170, 174 N.E. 441 (covering tort liability of professional for economic loss suffered by third parties who relied on misrepresentations made by the professional in the course of rendering a contractual service). See generally, Prosser and Keeton on Torts 5th ed. § 107, p. 746–49.

Missouri has fashioned many exceptions to the rule of privity of contract. For example, cases involving products liability, fraud or collusion, express warranties, and implied warranties. *Westerhold, supra,* 419 S.W.2d at 77. Negligent misrepresentation as an actionable tort has also been recognized in Missouri. *See, e.g., First National Bank of Sikeston v. Goodnight,* 721 S.W.2d 122, 125 (Mo.App.1986) ("To establish negligent liability for the act of another, a plaintiff must show: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure."); *Westerhold, supra,* 419 S.W.2d at 81 ("The determination of whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm.") (*quoting from Biankanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (Cal. en banc 1958)). Thus, a plaintiff may maintain a malpractice action against an accountant even though the plaintiff is not in privity with the accountant, so long as "the accountant knows the audit is to be use *by the plaintiff* for its benefit and guidance, or knows the recipient intends to supply the information to prospective users...." *999 v. Cox & Co.,* 574 F.Supp. 1026 (D.Mo.

1983) (*quoting from Aluma Kraft Manufacturing Company v. Elmer Fox & Company,* 493 S.W.2d 378, 383 (Mo.App.1973)).

Negligent misrepresentation is when:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communication the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement of Torts (2nd) § 552 (1977), cited in *First National Bank of Sikeston, supra,* 721 S.W.2d at 124.

In a case cited in the brief of Barr–Riddle, a Missouri court spoke to the issue of reliance on an incorrect survey by a third party. *Haughey Livery & Undertaking Co. v. Joyce,* 41 Mo.App. 564 (1890) concerned an action on an official bond. In *Haughey,* a party building a livery stable (plaintiff) relied on a surveyor's incorrect official plat for a particular area. The plaintiff then "erected a two-story, brick building in conformity with the survey, by reason of which it was greatly damaged." *Id.* at 566. The court found that plaintiff relied on the survey and was thereby dam-

aged in the amount of fifteen hundred dollars. Here, there is no such reliance.

In *P. Carlotta v. T.R. & Stark & Associates, Inc.*, 57 Md.App. 467, 470 A.2d 838 (1984), the court addressed the very same issue now before this court; can a property owner be allowed to "maintain a cause of action against a surveyor of the adjacent property who negligently surveys that property and who is caused to suffer damages as a result of the erroneous survey." In *Carlotta*, an adjoining landowner brought suit against his neighbor and their registered land surveyor. The dispute concerned the ownership of a piece of property. The neighbors were charged with trespass, while the surveyor was said to have negligently prepared an erroneous survey plat of the disputed property. The Maryland court concluded that the "surveyor of a disputed boundary line does not owe a duty of care to a non-reliant third party." *Id.* at 840.

While *Carlotta* is on point and this court agrees with the holding, an examination of cases dealing with abstractors is in order. The reasoning found in abstractor cases in compatible with controversies in the land surveyor context. For example, in *Martin v. Crowley, Wade & Milstead, Inc.*, 702 S.W.2d 57 (Mo.Banc 1985), the court was confronted by a situation where property owners sued a surveyor for damages to the market value of their home which was constructed too close to the property line because of a surveyor's error. The question arose as to when the statute of limitations began to run against the plaintiffs. The court cited a case against an abstract company based upon the company's negligent certification of an abstract, *Thorne v. Johnson*, 438 S.W.2d 658 (Mo.App.1972), in support of its conclusion that land owners were under no duty to double check surveyor's work and hence damages were not "capable of ascertainment" at the time of the survey.

In *First American Title Insurance Company, Inc. v. First Title Service Company of the Florida Keys Inc.*, 457 So.2d 467 (Fla.1984), the Supreme Court of Florida was confronted by a situation were First Title Service Company of the Florida Keys (defendant) had prepared abstracts for the sellers of two lots and that First American Title Insurance Company (plaintiff), relying on the abstracts, had issued owners' and mortgagees' title insurance policies to the buyers of the two lots and their lender. The plaintiff sued the defendant because the abstracts failed to note the existence of a recorded judgement against a former owner of the lots. The holder of the judgment had made a demand on the new owners for payment of the judgment.

In that context, the court decided that "when an abstract is prepared in the knowledge and under conditions in which an abstractor should reasonably expect that the employer is to provide it to third persons for purposes of inducing those persons to rely on the abstract as evidence of title, the abstracter's contractual duty to perform the service skillfully and diligently runs to the benefit of such known third parties." *Id.* at 472.

Under the Restatement version and under the rule expressed by the Florida Supreme Court, because the survey in the case at bar was done in connection with the sale of land, the Cooks and Millers (subsequent purchasers of the Bryants' property) would have standing to bring the present suit, provided that: 1) the survey was negligently prepared; 2) the surveyor should have reasonably known that the complaining party would rely on the survey; 3) the complaining party justifiably relied on the survey; and 4) that reliance resulted in a pecuniary loss.

The Barr–Riddle survey was done in connection with the sale of land—not in connection with a land dispute. It is doubtful whether the Baublits could satisfy the second prong of the aforementioned test. In any event, they certainly could not prove justifiable reliance on the survey. Mr. Baublit by his uncontradicted deposition testimony and court documents in the Bryant case continually disputed the results of the 1981 survey. The period of inaction of the Baublits' following the 1981 survey and the 1982 court action cannot be

said to amount to reliance on the 1981 survey.

If the Baublits thought something was wrong with the survey they should have taken timely action, and failure to do so after the damages were capable of ascertainment also ran them afoul of the 5 year statute of limitations. *Martin, supra,* 702 S.W.2d 57, 58. In *Martin,* the court stated that property owners had no duty to double check services provided by a surveyor. Therefore, in that case statute of limitations did not begin to run at the time of the survey, rather it began to run when the land owner knew or should have known of any reason to question the land surveyor's work. Here, the Baublits questioned the Barr–Riddle survey from the outset and therefore the trial court was correct in deciding that the statute of limitations had run on the their claim.

The judgment is affirmed.