**D.L. DEVELOPMENT, INC., Respondent,**

v.

**Bessie NANCE, Appellant.**

**No. WD 49136.**

Missouri Court of Appeals,
Western District.

March 9, 1995.

Brian Timothy Meyers, Kansas City, for respondent.

Douglas J. Patterson, Kansas City, for appellant.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

LOWENSTEIN, Judge.

This appeal arises from a landlord-tenant relationship gone sour. In a nutshell, the appeal arises from the following: 1) landlord rented a building to tenant for commercial use; 2) tenant wanted permission to sublease the building and asked for landlord's consent; 3) lease provided that landlord's consent to a sublease could not be unreasonably withheld; 4) landlord withheld consent; 5) tenant successfully sued landlord for breach of contract in Circuit Court.

D.L. Development, Inc. (tenant) had 68 years remaining on a 99 year commercial lease, dated June 1, 1962, with Nance (landlord) for a five to seven acre tract. In February, 1991, tenant negotiated with McCaw Cellular Communications to potentially sublease 4,900 square feet of the tract. The proposed use was the location of a cellular telephone antenna on a portion of the leased premises.

On March 4, 1991, tenant's attorney, Mr. Meise, mailed a letter to landlord requesting that she consent to the sublease, which she forwarded to her agent, her son, in Texas. On March 11, 1991, landlord's agent wrote a letter to Mr. Meise stating, "Because it would not be in our best interest, we ... are declining this proposal." The son wrote and

sent this letter before requesting or obtaining a copy of the proposed sublease. Because the sublease consent was declined without a stated reason, Meise called landlord's agent for an explanation, and agent told him that there would be no consent to sublet unless the original lease between landlord and tenant was renegotiated.

On January 21, 1992, tenant filed a petition for breach of contract. The petition prayed for damages in the form of the loss of the subrent which tenant would have received from the proposed subtenant. The trial court concluded that the refusal of landlord to consent to the sublease was arbitrary and awarded tenant $8,400 in damages and costs.

Landlord claims the trial court erred: 1) by ruling her refusal to consent as arbitrary; and 2) by awarding $8,400 in damages to tenant because such damages were contingent and speculative.

## I.

■ Landlord first claims the trial court erred by finding her refusal to consent was arbitrary.

In this court tried matter, this court must affirm the judgement of the trial court unless it is not supported by substantial evidence, is against the weight of the evidence, or incorrectly declares or misapplies the law. See Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Hansen v. Gary Naugle Constr. Co.*, 801 S.W.2d 71 (Mo.1990).

The main crux of landlord's appeal is that there was a crucial, important reason justifying the nonconsent of the sublease, which the trial court failed to properly consider in deciding her refusal to consent was arbitrary.

Landlord is, in essence, claiming she had all the justification in the world for withholding consent, because the proposed sublease contained provisions which were different and somewhat contradictory from those in the original lease, even though those reasons were not communicated to the tenant.

On the other hand, the trial court found she acted "arbitrarily." Arbitrary means "without rational basis" and "without cause based upon law," because she failed to even

consider, or obtain the sublease before withholding consent, and failed to state reasons for doing so in the letter to the tenant. *Canal Nat'l Bank v. United States*, 258 F.Supp. 626 (D.C.Me.1966).

The main case in this area is *Haack v. Great Atlantic and Pacific Tea Co.*, 603 S.W.2d 645 (Mo.App.1980). Landlord cites this case at length in support of her proposition that a decision not to sublet is subject to a presumption of "good business judgment". *Id.* at 650. Therefore, when a sublease affects the landlord's business, the tenant wishing to sublease must prove that the landlord's nonconsent is not based on good business judgment in order to recover under a breach of contract theory. *Id.*

The facts of *Haack* are as follows: The landlord (Haack) had a commercial lease with tenant A & P (a grocery company). A & P said it needed to sublease to a non-food operator (furniture store), because it could not find a lucrative enough food-related sublessee. *Id.* at 648. Before asking Haack for permission to sublet, A & P sublet the property to the furniture store. *Id.* After the fact, A & P wrote Haack, asking his permission. *Id.* Haack returned with a letter asking for information on who the subtenant was and for some information relating to the anticipated sales and financial condition of the subtenant; making his consent conditional on the release of such information. *Id.* at 648. After the information reached Haack, he declined consent, stating that because the proposed sublessee would not make sales in excess of $1,400,000 the sublease would not be lucrative enough, specifically that there was "no reasonable likelihood" that the sales of the furniture store would "approach" the amount provided for in the lease to general percentage rentals. *Id.* at 649.

In finding for Haack, the Court of Appeals ruled, "to not be arbitrary the decision had to be a reasonable exercise of business judgment on the part of the lessor." *Id.* at 650. In addition, it held each case must be reviewed on its own specific facts. *Id.*

Landlord claims *Haack* helps her because her decision, too, was based on sound business judgment. This claim is rejected. Nowhere in the letter declining consent is there a reason given for the rejection. There is no evidence that the landlord ever even read the proposed sublease, nor are the claimed "inconsistencies" between the main lease and the proposed sublease set forth for the tenant to have any sort of idea whatsoever why consent was being withheld. To reiterate, the letter of rejection sent by landlord's agent read,

> ... I have talked to our attorneys here and in Kansas City today, and do not feel that this sublease would be in our best interest. We, therefore, are declining this proposal.

As evidenced above, landlord's agent never mentioned if or when he looked at, or even if had a copy of the sublease; or what, if any, provisions were inconsistent; or why he felt such nonconsent was in the landlord's best interests. Such a blanket denial is not sufficient to create a presumption that the decision was based on good business judgment.

Landlord then claims that the agent took back the blanket denial when tenant phoned him after receiving the March 11 letter. When the tenant called him and asked him why he was declining the request to sublease, agent told him that "it has so many inconsistencies in the lease itself that I just don't feel comfortable with it, and I just feel that if we did, if we would renegotiate the (original) lease, then certainly we ought to go back to the original lease and talk about re-working the whole thing." Tenant found this rather confusing, but after further discussion, it became apparent that the sublease was contingent on a re-working of the main lease. Tenant did not agree to such renegotiation. Landlord feels this attempt to work towards an agreement is a good effort at cooperation, further making her actions reasonable and non-arbitrary.

This court finds to the contrary. This attempt to condition consent to sublease on a renegotiation of the underlying lease, under these facts, was anything but reasonable. It was, in essence, holding the consent to the sublease hostage for the ransom of renegotiating the lease. The inferences from this evidence point to the belief that this action by landlord was an attempt to negotiate the

lease basically because it was paying him no money at the present time. Where a lease agreement states consent to a sublease may not be unreasonably withheld and the landlord first denies, without seeing the terms of the sublease; and then, without first pointing to anything in the proposed sublease which would have a negative impact on the landlord, then insists on reworking the terms of the **original** lease, the only conclusion is that the landlord's actions were unreasonable.

There is substantial evidence to support the trial court's findings, therefore, the point is denied. Rule 73.01; *Murphy*, 536 S.W.2d at 30.

## II.

 Landlord then claims the trial court erred by awarding $8,400 in damages to tenant because any alleged damages are in the form of lost rental, which are too contingent and speculative to recover.

On the issue of damages, tenant testified that the sublease would run for an initial term of ten years for about $700 per month. Landlord is arguing that the measure of damages in this case was classified as "lost profits," under *All Star Amusement, Inc. v. Jones*, 727 S.W.2d 930 (Mo.App.1987). However, that is the wrong categorization. In a case involving a lease, as here, there is no gross revenue minus expenses formula to come up with any "net profit" margin. The measure, instead, is loss of rent, not business profits.

Landlord uses the *All Star* case, where a plaintiff who installed coin-operated games in defendant's bar, and then sued defendant for rescinding the contract after eight months. As damages, the plaintiff asked for its gross profits, which it would have earned over the remainder of the term of the contract. *Id.* The Court of Appeals found that "anticipated profits of an established business are recoverable only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount ..." *Id.* at 931. The court found that All Star's damage estimates were not reasonably proved.

However, here the landlord is mixing apples and oranges. *All Star* is simply inapplicable to the current facts at bar. *All Star* did not involve money lost under a proposed sublease. The measure of damages in this case, a breach of contract by the landlord, is the amount of money which would compensate tenant for the loss cause by the landlord's breach. *Adams v. Orkin Exterminating Co.*, 763 S.W.2d 318 (Mo.App.1988). Tenant is entitled to damages naturally and proximately caused by the breach and those damages that could have been reasonably contemplated by the landlord. *Mansfield v. Trailways, Inc.*, 732 S.W.2d 547 (Mo.App. 1987).

In this case, tenant testified the damages were $8,400 per year or $84,000 over the ten year term of the sublease. The sublease was signed and notarized by the tenant. There is sufficient evidence here, that but for the landlord's failure to consent, the tenant would have had a subtenant paying rent for at least ten years.

This court finds that, unlike future profits, a rent amount agreed to by parties willing to be bound, is reasonably certain and self-proving. By losing the right to sublease, the tenant lost the rent amount agreed to with the subtenant. *All Star* holds nothing to the contrary.

The trial court had discretion to award the damages from $1 up to $84,000 based upon the facts and figures testified to at trial. This court finds the award of damages ($8,400) not so arbitrary and unreasonable as to shock the sense of justice, thus no abuse occurred. *Pickett, P.C. v. American States Family Ins. Co.*, 857 S.W.2d 309 (Mo. App.1993).

The point is denied.

The judgment is affirmed.