Edwin S. GIBSON, Jr.,
Plaintiff/Respondent,

v.

Charles H. ADAMS, James V. Murphy, Madison Metal Services, Inc., Glennon Steel Company and Murphy Metals, Inc., Defendants/Appellants.

No. 69187.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 10, 1997.

Sonnenschein Nath & Rosenthal, Larry M. Bauer, Robert J. Isaacson, St. Louis, for Defendants/Appellants.

Curtis, Oetting, Heinz, Garrett & Soule, P.C., David P. Oetting, Kenneth J. Heinz, St. Louis, for Plaintiff/Respondent.

PUDLOWSKI, Judge.

Edwin S. Gibson (Gibson) formed Madison Metal Services, Inc. (Madison) with Charles H. Adams (Adams) and James V. Murphy (Murphy) in 1981. All three were shareholders of the company. After discharging Gibson in 1991, Adams and Murphy failed to hold shareholders' or directors' meetings and raided Madison's assets without obtaining shareholder or board approval, all to Gibson's detriment. The trial court found Adams and Murphy had breached their fiduciary duty owed to Gibson. Because substantial evidence exists to support the trial court's decision, we affirm it's finding of breach of fiduciary duty.

In 1988 Gibson, Adams and Murphy signed an agreement which provided if one of them was fired Madison would purchase his shares of stock for a specified price. After Gibson was fired, Adams and Murphy prevented Madison from buying Gibson's shares. Sub-

stantial evidence supports the trial court's finding of tortious interference with contract.

In his petition Gibson sought specific performance of the agreement. Adams and Murphy contend the agreement should have been voidable on grounds of mutual mistake, even though they admit they did not read it. Because there was no evidence of fraud, Adams and Murphy had knowledge of the document they signed.

Prior to the agreement Madison issued a subordinated note to a company owned in part by Gibson. The agreement provided that if Gibson was fired Madison could redeem the note and pay Gibson his apportioned share. The trial court ordered specific performance. Because the trial court did not abuse its discretion in ordering repayment of the note, we affirm this portion of the court's judgment.

The trial court ordered Adams and Murphy to each pay punitive damages. Because we cannot say the trial court abused its discretion in finding Adams' and Murphy's conduct rose to the level of maliciousness or wantonness, we affirm the court's award of punitive damages.

The trial court also awarded attorneys' fees as specified in the agreement. Because the trial court did not abuse its discretion in awarding attorneys' fees, we affirm its award.

## I. Background

In reviewing the facts, we do so in the light most favorable to the judgment. *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 897 (Mo. banc 1990). In 1979 Gibson and Adams incorporated Glennon Steel Company (Glennon). Each owned fifty percent of Glennon's outstanding stock. In 1980 Murphy formed Murphy Metals, Inc (MMI). Both Glennon and MMI were in the steel brokerage business. In 1981 Gibson, Adams and Murphy formed Madison to engage in steel production and processing. Gibson, Adams and Murphy were Madison's directors and its officers.

Gibson, Adams and Murphy took out personal loans for $100,000.00 and purchased Madison stock. Each also loaned Madison $100,000.00. In 1987 Glennon loaned Madison $119,695.71 and then $200,000.00 more. MMI loaned Madison nearly $160,000. In return, Madison issued promissory notes to each company.

As Madison's acting shareholders and directors, Gibson, Adams and Murphy executed corporate minutes and waivers of notice of annual shareholders' and directors' meetings from 1986 through 1990. The minutes explained all were to be paid the same salary. The shareholders also ratified corporate actions and re-elected themselves as the company's three directors.

In 1988 Gibson, Adams and Murphy executed a shareholder agreement which provided: 1) Madison would purchase all of a shareholder's stock in Madison in the event of the shareholder's death or involuntary termination; 2) Madison would prepay 50% of the promissory note it issued to Glennon to Gibson if Gibson died or was fired.

In March 1991 Madison, along with William Gilbert (Gilbert), formed Midwest Metal Reducers (Reducers). After acquiring Reducers, all men agreed Gibson would run Reducers for their mutual benefit and the benefit of Madison. Furthermore, they agreed Madison would subsidize Gibson's salary $4,000 per month to enable Gibson to continue receiving the same salary as Adams and Murphy, just as the three had agreed at Madison's last directors' meeting. This subsidizing of Gibson's salary was to continue until Reducers could fund Gibson's entire salary.

In October 1991 Gibson left for an extended vacation. When he returned, he discovered he had not received his paychecks and wrote a paycheck to himself. Adams thereafter told Gibson he would no longer receive any compensation from Madison or from Reducers. At this point, Gibson was fired.

In December 1991 Madison sent various documents to Gibson as a proposed buy out of Gibson's shares, a buy out which was different than the terms of the agreement the men and Madison had signed. Gibson refused all offers.

From 1991 until the present, neither Murphy, as president of Madison, nor Adams, as

secretary, notified Gibson of any Board of Directors' meetings. Gibson never consented to have such meetings waived. From 1991 until the trial no annual or special shareholders' meetings were held. No corporate minutes exist of any meetings altering executive compensation or approving expenditures. Since Gibson was fired, Murphy's and Adams' salaries have increased and both have received bonuses from Madison without obtaining authorization from the last duly appointed Board of Directors. Furthermore, following Gibson's dismissal, Murphy and Adams prevented Madison from fulfilling its obligation under the agreement to buy Gibson's shares of stock at the agreed upon price.

In December 1993 Gibson filed an amended petition against Adams and Murphy alleging a breach of fiduciary duties owed to him. In that count he sought actual and punitive damages. In Count II of the petition, Gibson sought actual and punitive damages from Adams and Murphy for tortiously interfering with his contract with Madison which required the company to buy his outstanding shares of stock. In Count III Gibson sought specific performance of the agreement, an agreement which provided for early payment of the note and buying Gibson's shares.

Following a bench trial the court found Gibson had been fired, that Murphy and Adams had breached fiduciary duties owed to Gibson, and that Adams and Murphy had tortiously interfered with Madison's contractual obligation to buy Gibson's shares of stock. In its order the trial court held Murphy, Adams and Madison jointly and severally liable for the value of the stock plus interest. The court also ordered Madison to pay Gibson fifty percent of the subordinated note it promised to Glennon. The court ordered all three defendants to pay Gibson's nearly $75,000.00 worth of attorneys' fees. Finally, the court ordered Murphy and Adams to pay punitive damages in the amount of $25,000.00 and $75,000.00, respectively, even though no compensatory damages had been given. From this order, Adams, Murphy, Madison, Glennon and MMI appeal.

On appeal, the appellants argue seven points: 1) the evidence does not support the trial court's finding that Murphy and Adams breached their fiduciary duties; 2) the trial court erred in finding Murphy and Adams had tortiously interfered with Gibson and Madison's contract as Murphy and Adams were themselves parties to the contract; 3) the trial court erred in holding Murphy and Adams jointly and severally liable, along with Madison, for the value of Gibson's stock; 4) the trial court should have found the agreement was voidable on the grounds of mutual mistake; 5) the trial court erred in ordering repayment of the subordinated note because Gibson never requested such relief; 6) punitive damages were improper since no compensatory damages were awarded; 7) attorneys' fees should have been limited to fees incurred while enforcing the agreement. We will address each of these in turn.

## II. Standard of Review

■ Before addressing the merits of appellants' appeal, it is important to examine the guidelines which govern this court in reviewing the trial court's decision. "A bench-tried judgment which reaches the correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment." *Graue v. Mo. Property Ins. Placement*, 847 S.W.2d 779, 782 (Mo. banc 1993). We must affirm the judgment of a court-tried case unless there is no evidence to support the judgment, the judgment is clearly against the weight of the evidence, or the judgment erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We should accept all inferences and evidence favorable to the judgment and disregard all contrary inferences. Furthermore, we are bound by the trial court's factual findings if such findings are supported by substantial evidence. *P & K Heating and Air Conditioning, Inc. v. Tusten Townhomes Redevelopment Corp.*, 877 S.W.2d 121 (Mo.App. E.D.1994). We will also give deference to the trial court in judging the credibility of witnesses, *Pinnell v. Jacobs*, 873 S.W.2d 925 (Mo.App. E.D.1994), and all factual issues upon which no specific findings have been made should be interpreted as having been found in accordance with the result reached. *Sunset Pools of St.*

*Louis v. Schaefer,* 869 S.W.2d 883, 885 (Mo. App. E.D.1994). It is with these guidelines that we now examine the appellants' points on appeal.

### III. Appellants' Appeal

A. *Whether evidence exists to support the trial court's decision that Adams and Murphy, by failing to call shareholder and board meetings and by failing to get board approval of questionable actions, breached their fiduciary duties.*

■ Adams' and Murphy's first point on appeal consists of two subpoints. In their first sub-point, Adams and Murphy argue the evidence does not support the trial court's decision that they breached their fiduciary duties. In their second sub-point, they argue the trial court erred in holding them personally liable for the value of Gibson's stock. We will first address whether there is evidence to support a finding of breach of fiduciary duty.

Missouri requires corporations to hold regular board of directors meetings. § 351.340 RSMo 1994. The statute provides the meetings can be waived if all members of the board consent in writing to waive the meeting. Missouri also requires an annual shareholders meeting. § 351.225 RSMo 1994. The statute does *not* permit a waiver of these meetings. The purpose of the annual shareholders' meeting is to elect the board of directors. After Gibson's dismissal, neither Murphy nor Adams called a shareholders' or board of directors' meeting from 1991 onward. No evidence was presented showing a written consent to waive these meetings. In the absence of these required meetings, Adams and Murphy took unauthorized actions which worked to Gibson's detriment.

■ A shareholder can maintain an individual action against a corporation and its directors when the injury alleged has specifically harmed the shareholder. *Gieselmann v. Stegeman,* 443 S.W.2d 127 (Mo.1969). Adams and Murphy increased their salaries while decreasing Gibson's, an action done without board or shareholder approval. After Gibson was fired, Adams purchased a competing steel brokerage company, St. Louis Steel Services, Inc. (Steel Services), which engaged in numerous transactions with both Madison and Madison's customers. Even though he was still an officer, director and shareholder of Madison, and even though he received over $6,000 a month in compensation from Madison, Adams continued to operate this competing steel brokerage company. At one point Adams sold Madison a steel slitter which he had purchased using Madison funds. From this sale, Adams received over $100,000.00 in profit.

Also after Gibson's discharge, Murphy had Madison pay for numerous personal expenses including a luxury cruise, his initiation fee and dues at a local country club and his son's college tuition, all without board authorization. Adams, likewise without board authorization, had Madison expend a substantial amount of money to help pay for his Florida condominium and for his home at the Lake of the Ozarks.

Noting that such competition with the corporation and the usurping of corporate opportunities are themselves enough to support a cause of action for breach of fiduciary duties, *Forinash v. Daugherty,* 697 S.W.2d 294, 301–02 (Mo.App.1985), all of these instances taken as a whole support the trial court's decision that Adams and Murphy failed to treat Gibson in good faith and in doing so breached their fiduciary duties owed to him.

Since substantial evidence existed to find Gibson had been injured by Adams' and Murphy's action, the trial court properly found Gibson had been damaged by Adams' and Murphy's breach of their fiduciary duties.

We hereby affirm the court's decision finding Adams and Murphy breached their fiduciary duties.

B. *Whether the trial court properly awarded equitable relief where a remedy at law existed.*

■ Adams and Murphy argue the trial court improperly found them jointly and severally liable, along with Madison, for the value of Gibson's shares. In support of their argument, they claim: 1) such relief was beyond the trial court's power; 2) the scope

of Gibson's pleadings did not specifically request such equitable relief.

In the amended petition Gibson sought damages against Adams and Murphy for breach of fiduciary duty in Count I, damages against Adams and Murphy for tortious interference with contract in Count II and sought specific performance of the stock purchase agreement solely against Madison in count III. The trial court found the elements of each of these counts had been proven. The trial court entered the following paragraph as part of its order granting relief:

18. Defendants are ordered to pay to Gibson $500,000.00, plus 9% prejudgment interest from January 1, 1992, totaling $657,500.00 as of May 31, 1995, for the value of Plaintiff's stock in Madison, this liability shall be joint and several among Madison, Adams and Murphy.

Adams and Murphy construe this paragraph of the order as an order in specific performance and contend that since they were not defendants in that count such relief should not have been entered against them. We do not construe this as ordering specific performance. An award of specific performance of a contract orders the defendant to perform the contract. In contrast this order does not order Madison to perform its contractual duties under the contract, that is to purchase the shares of stock, but instead is an award of damages, the value of stock plus interest, which is the measure of damages for tortious interference with contact. Further, the order is framed in terms of joint and several liability which is not a part of an award of specific performance. Accordingly, the only possible error was including Madison in this award of money damages; not in including Adams and Murphy. Madison has not raised on appeal any challenge to that order. This point is denied.

C. *Whether Murphy and Adams tortiously interfered with Gibson's contract when they had no economic interest in the contract except as shareholders in the corporation.*

■ In their second point on appeal, Murphy and Adams argue the trial court erred in finding they had tortiously interfered in the agreement between Madison and Gibson. They contend that because they were parties to the agreement they could not have tortiously interfered with the contract between Madison and Gibson. We disagree.

■ It has long been settled in Missouri that "[a] mere failure to perform a contract cannot serve as the basis of tort liability unless the breach is also an independent tort." *Haugland v. Parsons,* 863 S.W.2d 609, 610 (Mo.App. E.D.1992). Tortious interference with a contract is one such independent tort. *Hanrahan v. Nashua Corp.,* 752 S.W.2d 878 (Mo.App.1988); *Honigmann v. Hunter Group, Inc.,* 733 S.W.2d 799, 806 (Mo.App.1987). In order to prove tortious interference with a contract, five elements must be proven: 1) the existence of a contract; 2) defendant's knowledge of the contract; 3) that defendant induced or caused the breach of contract; 4) that the defendant's acts were not justified; 5) that the plaintiff thereby suffered damages. *Lick Creek Sewer Sys. v. Bank of Bourbon,* 747 S.W.2d 317, 322 (Mo.App.1988).

■ In this case, the first element at issue is justification; namely, whether Adams and Murphy were justified in causing Madison to breach its contract with Gibson. *Franklin v. Harris,* 762 S.W.2d 847, 849 (Mo.App.1989). When determining whether justification exists, Missouri recognizes a shareholder or an officer of a corporation is justified in inducing his or her corporation to breach. *Nola v. Merollis Chevrolet Kansas City, Inc.,* 537 S.W.2d 627, 634 (Mo.App. 1976). Such privilege, however, must be raised as an affirmative defense. The failure to do so is a waiver. *Honigmann,* 733 S.W.2d at 808. Adams and Murphy failed to raise this defense in their pleadings and as such waived this privilege.

■ Adams and Murphy argue they were justified in breaching the contract because they were parties to the contract. This, however, is not a correct statement of Missouri law. Missouri recognizes a party inducing the breach of a contract must have a valid, existing economic interest in that contract in order to be justified. *Lick Creek Sewer Sys.,* 747 S.W.2d at 323. If no such interest exists,

the party is not justified. All cases cited by Adams and Murphy support this line of reasoning. The only valid, existing economic interest Adams and Murphy could have had in preventing Madison from fulfilling its contract obligations with Gibson was as a shareholder or as a director. But by failing to assert this privilege, Adams and Murphy did not have a valid, existing economic interest when forcing Madison to breach its contract. Adams and Murphy were not justified.

Based upon the facts presented and the evidence before this court, Gibson met his burden of proving Adams and Murphy were unjustified in forcing Madison to breach its contract. *Honigmann*, 733 S.W.2d at 807.

The final element necessary in a tortious interference with contract claim is the issue of damages. In the instant case, the damages Gibson sustained were the value of the stock plus interest. He suffered those damages at the moment Madison refused to purchase his stock in accord with the contract, thus breaching the contract it had with him. Therefore, when Adams and Murphy prevented Madison from purchasing his stock, Gibson was damaged as a result of their interference. Having proven he was damaged, Gibson met his burden of proving Adams and Murphy had tortiously interfered with his contract with Madison. Point two is denied.

D. *Whether the agreement was voidable on grounds of mutual mistake where Adams and Murphy failed to read the agreement prior to signing it.*

■ In their third point of error, Adams and Murphy argue the trial court should have voided the agreement on grounds of mutual mistake. They contend the agreement was only meant to deal with death benefits and was not supposed to address involuntary dismissals at all. They admit, however, they failed to review the document before signing it.

■ "It has been long settled in Missouri that absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he/she signs." *Mason v. Mason*, 873 S.W.2d 631 (Mo.App. E.D.1994). Adams and Murphy presented no evidence of fraud. As such, this court must recognize they were capable of reading and understanding the agreement. They are charged with the knowledge of the agreement. Point three is denied.

E. *Whether Madison is liable to repay Gibson his portion of the subordinated note where the agreement states Madison "may" repay the note.*

■ In the fourth point of error Madison argues the trial court should not have forced it to pay Gibson his percentage of the note as stated in the agreement. Madison argues the agreement gives it the option of paying the note, but such repayment is not mandated. The agreement provides:

In addition to the foregoing provisions pertaining to the redemption of stock, the parties further agree that the subordinated notes issued by Madison to MMI in the amount of $159,847.85 and to Glennon in the amount of $319,695.71, may be pre-paid by Madison, provided the Subordination Agreement with respect to the amount at issue is waived or otherwise amended by the parties to the subordination to permit pre-payment, under the following conditions:

With respect to the death or involuntary termination of employment with Madison of any Stockholder, payment of said note shall be made under the same terms as for such occurrences as set forth in 1–B or 1–C in the amount of: for Murphy, the amount of said note; for Adams or Gibson, 50% of the amount of said note. Madison shall make a good faith effort to obtain waiver of the Subordination Agreement with respect to the required payment of the Subordinated Note.

In support of its argument, Madison cites *S.J.V. by Blank v. Voshage*, 860 S.W.2d 802 (Mo.App. E.D.1993), which states the word "may", when considered in its plain and ordinary meaning in interpreting a statute, does not mandate the action which follows it. *Voshage*, 860 S.W.2d at 804.

However the *Voshage* court further explained that the use of the word "may" gave

discretionary power to the court to determine whether action is mandated: " [The use of 'may'] implies alternate possibilities and that the conferee of the power, in this case the court, has discretion in the exercise of the power." [cite omitted]. *Id.* The issue then before this court is whether the trial court abused its discretion in mandating Madison pay the subordinated note. This we cannot say. We must read the contract in its entirety, *Parker v. Pulitzer Publishing Co.,* 882 S.W.2d 245, 249 (Mo.App. E.D.1994), and in so doing we find language to support the trial court's mandate requiring Madison to pay Gibson the subordinated amount. Furthermore, such a finding is proper since Gibson sought specific performance of the agreement in his petition. *Farrow v. Farrow,* 277 S.W.2d 532 (Mo.1955).

Madison also argues it should not have to pay the note since no evidence was presented showing the subordination agreement was waived. We believe the plain language of the agreement, *Parker,* 882 S.W.2d at 249, explains Madison is liable where any question about the amount of money due under the agreement is waived. Evidence was presented showing the amount of money due under the agreement was $159,847.85 and $319,695.71. These amounts were not contested. Point four is denied.

### F. Whether the trial court abused its discretion in awarding punitive damages.

■ In their fifth point on appeal, Adams and Murphy argue the trial court improperly awarded punitive damages. The trial court found Gibson was entitled to punitive damages for both the breach of fiduciary duties claim and the tortious interference with contract claim. The court assessed $75,000.00 punitive damages against Adams and $25,000.00 punitive damages against Murphy. There was an award of actual damages against both Adams and Murphy. We have affirmed the award of compensatory damages for tortious interference with contract. Based upon the evidence presented, we cannot say the trial court abused its discretion in finding Adams' and Murphy's conduct rose to the level of maliciousness or wantonness.

*Forinash v. Daugherty,* 697 S.W.2d 294 (Mo. App.1985). The award of punitive damages is affirmed.

### G. Whether the trial court abused its discretion in awarding attorneys' fees.

■ In their sixth point on appeal, the appellants argue the trial court erred in ordering them to pay attorneys' fees of $74,795.41. The appellants argue under the agreement Gibson is only entitled to the amount of attorneys' fees incurred for enforcing the agreement. Appellants contend the cost of enforcing the agreement is not $74,795.41, but a fraction thereof. The remainder of the attorneys' fees, appellants contend, resulted from the prosecution of Gibson's breach of fiduciary duty and tortious interference with contract claims. According to the appellants, the trial court should have awarded only those attorneys' fees which were incurred specifically to enforce the agreement.

■ We recognize the trial court has broad discretion in awarding attorneys' fees. *In re Marriage of Layton,* 687 S.W.2d 214 (Mo.App.1984). While it does have broad discretion, when a claim for attorneys' fees is based upon a contract, the trial court must adhere to the terms of the contract and may not go beyond it. *Harris v. Union Elec. Co.,* 766 S.W.2d 80 (Mo. banc 1989). We also recognize when evidence is introduced at trial and no objection is made, the party has waived its right to raise this issue on appeal.

In his petition Gibson sought enforcement of the agreement he signed. The agreement provided attorneys' fees for a party who had to bring an action to have the agreement enforced. At trial Gibson introduced Exhibit 20, a listing of his attorneys' fees. Exhibit 20 was admitted *without objection from appellants.* Appellants now ask this court to assume the attorneys' fees incurred are not the result of enforcing this agreement. This we will not do. While we recognize a question may exist whether all of the attorneys' fees in Exhibit 20 are the attorneys' fees incurred for the enforcement of this agreement, appellants' failure to object to these at trial waived their right to argue about the amount on appeal. As such, we cannot say the trial

 

court abused its discretion in awarding attorneys' fees in the amount it did. Point six is denied.

The judgment of the trial court is affirmed.[1]

CRANE, P.J., and GERALD M. SMITH, J., concur.

---

1. Gibson's motion to modify the appeal bond is hereby denied.