**FIDELITY NATIONAL TITLE INSURANCE CO., Plaintiff–Respondent,**

v.

**TRI–LAKES TITLE CO., INC., Defendant–Appellant.**

No. 21771.

Missouri Court of Appeals, Southern District, Division Two.

April 29, 1998.

Mark Rundel, Galena, for Appellant.

James R. Fossard, Springfield, for Respondent.

BARNEY, Judge.

Fidelity National Title Insurance Company (Plaintiff) brought this action against Tri-Lakes Title Company, Inc. (Defendant) for breach of contract and negligence relative to Defendant's preparation of a title report. Following a court-tried case, judgment was entered in favor of Plaintiff for damages in the sum of $37,500.00. Defendant appeals.

This Court reviews the facts in the light most favorable to the trial court's judgment. *Gibson v. Adams*, 946 S.W.2d 796, 799 (Mo. App.1997).

Plaintiff operates a title insurance business in Springfield, Missouri. Defendant is a title company engaged in the business of abstracting titles, title insurance, and escrow closings. Defendant is located in Branson, Missouri. Defendant has prepared approximately 160 title reports for Plaintiff since 1993.

During October 1993, Plaintiff requested that Defendant prepare a title report concerning some real estate located in Taney County, Missouri. Defendant agreed to prepare the report. On October 7, 1993, Defen-

dant delivered the title report to Plaintiff. Plaintiff payed Defendant $150.00 for the title report. Plaintiff also agreed to pay and did pay to Defendant an additional sum of $1,295.75 for the title report, such amount representing one-half of the insurance premium proceeds Plaintiff was to receive from the purchasers of the real estate covered by the title report.

■■■ Relying on Defendant's title report, on December 7, 1993, Plaintiff issued a title insurance policy to Clyde L. Lorance and Anise C. Brasher, which covered the real estate identified in the title report prepared by Defendant.[1]

Mr. Lorance and Ms. Brasher later discovered that, prior to their purchase of the real estate, an easement was granted to the City of Branson by the previous owners of the property for a "permanent street right-of-way" and for a "permanent slope maintenance easement."[2] The easement agreement was duly recorded in the Taney County Recorder's Office on September 8, 1993. Defendant's title report failed to disclose the existence of this easement agreement, as candidly admitted by Defendant's president.

Mr. Lorance and Ms. Brasher then filed a claim on their title insurance policy issued by Plaintiff. On April 18, 1996, Plaintiff settled the claim and paid $45,000.00 to Mr. Lorance and Ms. Brasher as compensation for their property's diminished value due to the two easements in question. Plaintiff then initiated this action against Defendant in two counts, breach of contract and negligence, seeking recovery of the damages it sustained in settlement of its insured's claim.

On appeal of the trial court's judgment, Defendant assigns three points of trial court error. First, it avers that the trial court

erred in failing to sustain its motion for directed verdict at the close of Plaintiff's evidence because Plaintiff failed to produce any title insurance *policy* establishing Plaintiff's right of subrogation. Second, Defendant maintains that the trial court erred in determining Plaintiff's damages under its breach of contract claim because the proper measure of damages is determined by the difference in the fair market value of the property before and after injury and that the trial court's determination was not supported by the evidence. Third, Defendant maintains that the trial court erred in granting judgment to Plaintiff under its negligence claim because Plaintiff failed to adduce any evidence of lack of reasonable care or the duty owed and thereby failed to prove all elements of its cause of action in negligence.

On review, we must affirm the judgment of the trial court unless there is no evidence to support the judgment, the judgment is clearly against the weight of the evidence, or the judgment erroneously declares or applies the law. *Gibson*, 946 S.W.2d at 800. We accept all inferences and evidence favorable to the judgment and disregard all contrary inferences. *Id.* Furthermore, we are bound by the trial court's factual findings if such findings are supported by substantial evidence. *Id.* We will give deference to the trial court in judging credibility of witnesses, and all factual issues upon which no specific findings have been made will be interpreted by this Court as having been found in accordance with the result reached by the trial court. *Id.*

### I.

■■■ In Defendant's first assignment of error, it contends that the trial court erred in

---

1. *See* §§ 381.011–.241, RSMo 1994. A policy of title insurance is in the nature of a warranty. *Lawyers Title Ins. Corp. v. Research Loan & Invest. Corp.*, 361 F.2d 764, 767 (8th Cir.1966). Title insurance is a contract to indemnify the insured for any losses incurred as a result of later found defects in title. *Aboussie v. Chicago Title Ins. Co.*, 949 S.W.2d 207, 209 (Mo.App.1997).

2. The purpose of the easement was described in the easement agreement, recorded at Book 0321, Page 7438–40, Taney County Recorder's Office, as follows:

For street purposes as part of Stockstill Road together with easements in remaining lands on the abutting property along and adjacent to said street, where required, for the location, construction, and maintenance of an embankment or for sloping the sides of cuts back to construct and maintain said street at the established grade; also, said parties of the first part are hereby waiving damages, if any, by reason of the grading of said street.

failing to sustain its motion for directed verdict because the Plaintiff failed to prove that it was entitled to subrogation under the title insurance policy it issued to Mr. Lorance and Ms. Brasher. Specifically, Defendant avers that it was necessary for Plaintiff to produce to the trial court the title insurance policy issued to Mr. Lorance and Ms. Brasher, and that by failing to produce same, Plaintiff failed to establish that it was entitled to indemnity or subrogation.

Directing a verdict is a drastic measure. *Schumacher v. Barker*, 948 S.W.2d 166, 168 (Mo.App.1997). When the asserted error is failure to grant a directed verdict for the defendant, this Court examines the evidence presented at trial to determine whether plaintiff submitted substantial evidence that tends to prove the facts essential to plaintiff's claim. *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 801 (Mo. banc 1997). We review the facts and evidence in the light most favorable to the plaintiff. *Id.* If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the finder of fact and a directed verdict is improper. *Id.*

Here, we note that Plaintiff's petition alleged two counts against Defendant: (1) breach of contract, and (2) negligence. We also note that notwithstanding Plaintiff's reference to "subrogation" in paragraph 17 of its petition, neither of the two theories of recovery alleged in Plaintiff's petition were dependent on a right of written, contractual subrogation as in the case of an insurance policy.[3]

■ To make a submissible case for a breach of contract claim, a plaintiff must allege and prove (1) mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of contract. *Muir v. Ruder*, 945 S.W.2d 33, 36 (Mo.App.1997); *Howe v.*

*ALD Services, Inc.*, 941 S.W.2d 645, 650 (Mo. App.1997).

The evidence shows that Plaintiff and Defendant developed a *modus operandi* by which one party made title searches for the other in their respective counties:

Q. Okay. Now you in the ordinary course of business with Tri–Lakes and dealing with other title companies like Fidelity, is it not typical for you sometimes to prepare title reports for other title insurance companies that are in turn going to close real estate transactions?

A. [by Defendant's president]: Sure. Absolutely.

. . .

Q. So it's typical in those circumstances for you to know that the closing company in another county for example is going to rely upon your report in doing whatever work they do?

A. I assume that would be the basis for whatever work they are performing.

In response to the question as to "how many times you've done work—your company's done work for Fidelity?" Defendant's president stated "I think the last check we had done 160 *searches* since 1993." (emphasis added). Defendant's president then acknowledged that he was requested to do the instant "title search," and that he was "[j]ust to provide information to Fidelity."

The parties' agreement, then, was not for Defendant to issue a title insurance policy to either Plaintiff or a third party, but, rather to make "searches" and make a "title report," similar in scope, for example, with that of an attorney making a title search.[4] Plaintiff was therefore not required to either produce the title insurance policy or otherwise prove that it had a subrogation right precedent to establishing liability and recovering damages under the theories alleged in its petition. "A duty to exercise care may be imposed by entering into a contractual rela-

---

**3.** Paragraph 18 of Plaintiff's petition alleged "[t]hat Plaintiff is entitled to damages from Defendant on the basis of privity of contract which Plaintiff had with Defendant."

**4.** "In real estate practice in Missouri, the term 'title report', 'preliminary report' and 'commitment' all refer to the same type document." *Rosenberg v. Missouri Title Guar. Co.*, 764 S.W.2d 684, 687 n. 2 (Mo.App.1988).

tionship." *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468, 472 (Mo.App.1987).

In *Slate v. Boone County Abstract Co.*, 432 S.W.2d 305, 307 (Mo.1968), our Supreme Court authorized a third party buyer of real estate, as third party beneficiary, to sue based upon a contract entered into between an abstract company and the seller of the property. The Court gave implicit recognition of the contractual relationship existing among the three parties, the breach of which authorized recovery of damages by buyer. *Id.* at 307–08.

■ Here, Defendant admitted to Plaintiff's allegation that Defendant agreed to prepare a title report [5] for Plaintiff on the particular property for which Plaintiff issued a title insurance policy. Defendant also admitted that it did prepare and deliver to Plaintiff a title report covering the particular property for which Plaintiff issued a title insurance policy. Defendant admitted that it received payment from Plaintiff for preparing the title report. Defendant admitted that it knew that Plaintiff would rely on the accuracy of the title report in issuing a title insurance policy.

In its judgment the trial court declared:

The Court finds plaintiff and defendant entered into a contract whereby defendant would provide a title report and for which defendant was paid $150.00 together with $1295.75 as one-half of the premium received from issuance of the title policy. The Court finds defendant *breached the contract* by failing to include the right-of-way and slope maintenance easement.

(Emphasis added).

"[I]t is for the trier of fact to determine whether the drafters of the [title report] owe a contractual duty to report matters that may constitute a defect in title and our review is limited to whether there is substantial evidence to support that finding." *Rosenberg*, 764 S.W.2d at 687. We conclude that Plaintiff made a submissible case on the issue of breach of contract and that Defendant's motion for directed verdict was properly denied. Point denied.

5. For a detailed discussion on title searches and inspections in preparation of a title report, *see* I

## II.

We next address Defendant's third assignment of trial court error. Defendant asseverates that the trial court erred in granting judgment to Plaintiff on its negligence claim because of Plaintiff's failure to prove a duty of care or lack of reasonable care by Defendant.

■ Whether a duty exists is a question of law determined by the court. *Lockwood v. Jackson County, Missouri*, 951 S.W.2d 354, 357 (Mo.App.1997). In determining whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing the burden on the defendant. *Id.*

■ We determine that Defendant engaged in an act of negligent misrepresentation in preparing its title report. Negligent misrepresentation as an actionable tort has been recognized in Missouri. *See Baublit v. Barr & Riddle Engineering Co.*, 768 S.W.2d 233, 235 (Mo.App.1989).

■ Negligent misrepresentation occurs when:

(1) One who, in the course of his business, professionor employment, or in any other transaction in which he has pecuniary interest, supplies false information for the guidance of others in their business transactions,is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicat[ing] the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

MO. REAL ESTATE PRACTICE, §§ 1.1–.23 (Mo.Bar 3rd ed.1996).

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Baublit*, 768 S.W.2d at 235 (quoting RESTATEMENT (SECOND) OF TORTS § 552 (1977)).

Thus, in *First American Title Ins. Co. v. First Title Serv. Co.*, 457 So.2d 467 (Fla.1984) one abstract company prepared abstracts for the sellers of two lots and a second abstract company relied on these abstracts in issuing owners' and mortgagees' title insurance policies to the buyers of the lots from the sellers, and buyer's lender. *Id.* at 468. However, the first abstract company failed to note the existence of a recorded judgment. *Id.* After closing, the holder of the judgment made a demand on the new owners for payment of the judgment and the second abstract company became obligated to satisfy the judgment. *Id.*

The Florida court found the first abstract company liable to the second abstract company for the damages paid by the second abstract company to the buyers. *Id.* at 473. The court reasoned that:

Where the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs as we have said, not only to his customer, but to the purchaser. *Moreover, others involved in the transaction through their relationship to the purchaser—such as lender-mortgagees, tenants and title insurers—will also be protected where the purchaser's reliance was known or should have been known to the abstracter.*

*First American Title Ins.*, 457 So.2d at 473 (emphasis added). The court also added that evidence as to whether one abstracter knew or reasonably should have known that the abstract was ordered for the use of the purchasers or others likely to rely upon it in the near future could be "shown by inference from circumstances." *Id.* at 474; [6] *see also Baublit*, 768 S.W.2d at 235 (Mo.App.1989)(a plaintiff may maintain a malpractice action against an accountant even though the plaintiff is not in privity with the accountant, so long as "the accountant knows the audit is to be use[d] *by the plaintiff* for its benefit and guidance, or knows the recipient intends to supply the information to prospective users")(quoting *999 v. Cox & Co.*, 574 F.Supp. 1026 (D.Mo.1983)); *see also Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W.2d 378, 383 (Mo.App.1973).

In the instant matter Defendant admitted that an easement for a right-of-way and an easement for a slope maintenance were in existence and were recorded with the Taney County Recorder's Office at the time it prepared the title report, and that he had constructive notice of their existence. The Defendant also knew that he submitted his "search" or title report for further use by Plaintiff in Plaintiff's issuance of a title insurance policy to a third party. The testimony also establishes a prima facie finding that Plaintiff suffered a pecuniary loss as a proximate result of Defendant's negligence in providing incorrect information regarding the outstanding easement, and Plaintiff ultimately settled the claim made by its insured on insured's title insurance policy for the sum of $45,000.00. *See Hartford Acc. and Indem. Co. v. Contico Int'l, Inc.*, 901 S.W.2d 210, 212 (Mo.App.1995); *Colgan v. Washington Realty Co.*, 879 S.W.2d 686 (Mo.App.1994); *Frame v. Boatmen's Bank*, 824 S.W.2d 491, 496–97 (Mo.App.1992); *Baublit*, 768 S.W.2d at 235. Point denied.

### III.

■ Lastly, we address Defendant's second assignment of error. Defendant avers

---

**6.** The court emphasized that it was declining to recognize an abstracter's liability in tort for negligence to any and all "foreseeable injured parties." *First American Title Ins.*, 457 So.2d at 474.

that the trial court erred in determining Plaintiff's damages under Count I of its petition. Defendant asserts that the trial court failed to employ the proper measure of damages "without considering the effect of the taking of the property and in amounts unsupported by the evidence."

We note that Plaintiff settled with its insured for the amount of $45,000.00. However, this figure may or may not constitute the correct measure of damages suffered by Plaintiff as a result of Defendant's breach of contract or negligence. In determining Plaintiff's measure of damages, we are guided by the methodology that has been developed in computing losses incurred resulting from a defect in title in the context of title insurance.

As heretofore mentioned, "[t]itle insurance is a contract to indemnify the insured for any losses incurred as a result of later found defects in title." *Aboussie,* 949 S.W.2d at 209. "Recovery is generally limited to the amount necessary to remove the title defect or the difference between the fair market value of the property conveyed and its fair market value had it been as described in the title policy." *Id.* "Under certain circumstances a title insurer may be liable for breach of contract or negligence." *Id.* "However, at least in cases involving a partial and not a total failure of title, the measure of damages is the same—i.e., the difference in fair market value or the cost of restoring title, whichever is less, up to the limits of the policy." *Id.; see also Evinger,* 726 S.W.2d at 475; *Fohn v. Title Ins. Corp.,* 529 S.W.2d 1, 4 (Mo. banc 1975).

Here, the trial court found that Plaintiff's total damages resulting from the breach of contract *and* negligence were $50,000.00. While Defendant presented evidence showing that the easement caused no damage to the land in question, there was also support for the proposition that the property in question had been damaged to the extent of $50,000.00.[7] The issue of damages is left to the sound discretion of the trial court as the trier of fact, *Carl v. Dickens,* 809 S.W.2d 466, 470 (Mo.App.1991), and a trial court has wide discretion in its determination of damages. *Iota Mgmt. v. Boulevard Inv. Co.,* 731 S.W.2d 399, 421 (Mo.App.1987); *see also D.L. Development, Inc. v. Nance,* 894 S.W.2d 258, 261 (Mo.App.1995). Based upon the facts and figures testified to at trial, we find that the trial court's initial determination that Plaintiff's damages amounted to $50,000.00 was "not so arbitrary or unreasonable as to shock the sense of justice." *See D.L. Development,* 894 S.W.2d at 261. Nevertheless, we are troubled with the trial court's final judgment, wherein it bifurcated the damages awarded to Plaintiff.

Plaintiff was awarded (a) $25,000.00 under its breach of contract claim, and (b) $25,000.00 under its negligence claim. With regard to Plaintiff's damages under its negligence claim, the trial court specifically found that Plaintiff was "50% at fault for failing to identify the deed to the City of Branson conveying the right-of-way and slope maintenance easement."[8] The trial court then reduced Plaintiff's damages under its negligence claim to $12,500.00. Plaintiff's total damages award was therefore $37,500.00.

Although Plaintiff is entitled to proceed on various theories of recovery, he cannot receive duplicative damages, instead he must establish a separate injury on each theory. *Bold v. Simpson,* 802 F.2d 314, 321 (8th Cir.1986). "The purpose of an award of damages is to make the injured person whole

---

7. Plaintiff's appraiser testified that "the value of the property prior to the easement and the value of the property after the easement" amounted to a difference of $45,000.00, being the "net damages." He also assessed the damages to the property for the right-of-way easement at $5,000.00.

8. In *Chicago Title Ins. Co. v. Mertens,* 878 S.W.2d 899, 902 (Mo.App.1994), the court concluded that comparative fault principles are not applicable to "matters like economic loss resulting from a tort such as negligent misrepresentation, or

interference with contractual relations or injurious falsehood, or harm to reputation resulting from defamation." Compare the foregoing with the holding in *Naes v. Reinhold Development Co.,* 950 S.W.2d 681, 683 (Mo.App.1997)(involving suit against developer for property damage caused by earth slide) in which it was held that "there is support for considering mitigation as an element of fault in the context of comparative fault and not solely as a limitation of provable damages." *Id.*

by money compensation. An injury arises when the legal right of the person is violated." *Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo.App.1991); *see also Schreibman v. Zanetti*, 909 S.W.2d 692, 703 (Mo.App.1995). "A single transaction may invade more than one right, and the person injured may sue on more than one theory of recovery. The plaintiff, however, may not be made more than whole or receive more than one full recovery for the same harm." *Id.; Clayton Brokerage Co. v. Pilla*, 632 S.W.2d 300, 306 (Mo.App.1982).

In the context of the facts of this case, the damages awarded for contract and negligence are coextensive with each other. They are duplicative damages arising from the same set of facts. *See Dierker Assoc., D.C., P.C. v. Gillis*, 859 S.W.2d 737, 750 (Mo.App. 1993). Were it not for the fact that the trial court found Plaintiff's damages to be $50,-000.00, this Court would otherwise be justified in merging the two awards into one judgment of $25,000.00. *See Schreibman*, 909 S.W.2d at 704; *Kincaid Enterprises*, 812 S.W.2d at 900 (discussing merger of duplicate damages).

We determine that the judgment contains a contradiction within itself. "A judgment cannot stand when it is based on findings of fact which are antagonistic, inconsistent, or contradictory as to material matters, or when it is based on conclusions of law which are at variance with the findings of fact." *Donnelly v. Donnelly*, 951 S.W.2d 650, 653 (Mo.App. 1997).

The judgment is vacated and the case is remanded to the trial court for purposes of its selecting one of the two mentioned theories of recovery under which it awarded damages to Plaintiff, together with a determination of appropriate damages. In its sound discretion, the trial court may receive additional evidence in this matter.

PARRISH, P.J., and SHRUM, J., concur.